PROCESS CONTROL CORPORATION,
Plaintiff–Appellant,

v.

HYDRECLAIM CORPORATION,
Defendant–Cross Appellant.

Nos. 98–1082, 98–1277.

United States Court of Appeals,
Federal Circuit.

Sept. 7, 1999.

Rehearing Denied Oct. 25, 1999.

Todd Deveau, Deveau, Colton & Marquis, Atlanta, Georgia, argued for the plaintiff-appellant. With him on the brief were Harold L. Marquis and Ryan A. Schneider.

Bradley A. Slutsky, King & Spaulding, Atlanta, Georgia, argued for the defendant-cross appellant. With him on the brief were Joseph R. Bankoff and Christian S. Genetski.

Before BRYSON, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and GAJARSA, Circuit Judge.

GAJARSA, Circuit Judge.

Process Control Corporation ("Process Control") appeals the decision of the United States District Court for the Northern District of Georgia, Docket No. 93–CV–2795, wherein the district court sustained the validity and enforceability of U.S. Patent No. 5,148,943 owned by HydReclaim Corporation ("HydReclaim"), and found that Process Control had willfully infringed certain claims of that patent. Because the district court erred in its construction of the claims at issue and because the claims as written and correctly construed are invalid, we reverse the district court's determination that the patent is valid and vacate its finding of infringement.

## BACKGROUND

HydReclaim is the owner of U.S. Patent No. 5,148,943 ("the '943 patent") directed to continuous gravimetric blenders used in the plastics industry. These blenders mix multiple solid ingredients in appropriate proportions based on weight and feed the mixture to a weighed common hopper. The resulting mixture is then discharged from the weighed common hopper to a processing machine, i.e., an extruder, that heats and combines the blended ingredients into a desired final product.

Prior to the invention described in the '943 patent, the discharge rate of continuous gravimetric blenders was controlled by using level sensing devices that measured and maintained constant the volume of blended material in the common hopper. Because the densities of the materials to be blended varied, such prior art devices encountered various drawbacks. These drawbacks included poor control over the accuracy of the recipe provided by the blender to the extruder and poor control over the discharge rate of the blended materials from the common hopper to the extruder because of the inability to determine the weight of the blended material leaving the common hopper. These drawbacks resulted in a final extruded product of inconsistent quality.

The invention described in the '943 patent solved these problems by measuring the weight, rather than the volume, of the material in the common hopper and maintaining that weight in the common hopper at a constant value. A device measures the rate at which the individual ingredient materials are discharged into the common hopper, and another device measures the change in weight of the common hopper over time. Using these two variables and the basic principle of mass balancing, the rate of the processing machine is determined, i.e., the rate at which material is processed by the extruder is learned. By matching that learned gravimetric speed of the extruder to the gravimetric speed of the blender, a constant weight of blended material in the common hopper is maintained.

In particular, as shown in Figure 2 of the '943 patent reproduced below, the ingredients are discharged from individual ingredient hoppers *12* and directed to a blending chamber *32*, after which the blended ingredients are directed to a common hopper *30* equipped with a weighing device *40*. '943 Patent, col. 5, ll. 26–32.

FIG - 2

A master computer control unit (not shown) is coupled to individual metering devices *10* associated with the individual ingredient hoppers. The metering devices control the material discharge rate of each individual ingredient to maintain a preset ratio of the ingredients. *Id.* at col. 3, ll. 51–58. The master computer control unit is also coupled to the weighing device *40* associated with the common hopper for determining a discharge rate of the blended ingredients from the common hopper to the processing machine *5* based on the weight loss of the common hopper over time. *Id.* at col. 3, ll. 35–39. The master computer control unit thus determines the material processing rate of the processing machine, *i.e.*, the extruder, based on the sum of the material discharge feed rates of the individual ingredients to the common hopper plus or minus the discharge rate of the blended ingredients from the common hopper to the processing machine. *Id.* at col. 3, ll. 45–51. In other words, a constant weight of ingredients in the common hopper is maintained by matching the material processing rate of the processing machine (what comes *out* of the common hopper) to the sum of the individual ingredient discharge rates (what goes *into* the common hopper), by using information about the change in weight of the common hopper over time.

Process Control is a competitor of HydReclaim in the material blending business. Process Control uses three methods that are alleged by HydReclaim to infringe the '943 patent. Method One, performed by Process Control's BG blender, operates identically to HydReclaim's 470 blender, which embodies the invention disclosed in the '943 patent. Method Two operates to control the weight in the common hopper by using a high and a low control point, the weight oscillating between the control points. Method Three operates to control

the weight in the common hopper by using a set point controlled by a second variable, *i.e.*, total blender rate. Method Three is based on a proportional integral derivative (PID) control system.

HydReclaim sued Process Control in Michigan in December 1992 for infringement of the '943 patent, but the action was dismissed for lack of jurisdiction. During subsequent settlement negotiations, Process Control filed the present declaratory judgment action in December 1993 in Georgia, asserting, *inter alia*, invalidity, unenforceability, and noninfringement of the '943 patent. During a bench trial, the district court construed the claims as urged by HydReclaim, sustained the validity of the '943 patent, found that Process Control had willfully infringed claims 1, 3–7, 11, and 13–14 of the '943 patent, found that the '943 patent was enforceable, and awarded HydReclaim a 15% reasonable royalty and its attorneys' fees and costs.

Process Control appeals, challenging the district court's claim construction, the finding of willful infringement, the determination of nonobviousness, the finding of enforceability, and the award of a 15% reasonable royalty. HydReclaim cross-appeals the refusal to award lost profits and to enhance the damages and the district court's exclusion of its damages experts at trial. As will be evident from the discussion below, we need reach only the issue of claim construction.

## DISCUSSION

### I. CLAIM CONSTRUCTION

#### A.

■ Claim construction is a matter of law, *see Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71, 34 USPQ2d 1321, 1322 (Fed.Cir.1995) (en banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), that we review *de novo, see Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1451, 46 USPQ2d 1169, 1171 (Fed.Cir.1998) (en banc).

#### B.

Claims 1–6 of the '943 patent are directed to a method of metering different material ingredients for discharge to a material processing machine, and claims 7–14 are directed to an apparatus for carrying out that method. Claims 1–7, 11, and 13–14 are at issue in this appeal, of which claims 1, 4, 7, and 14 are independent.

The district court determined that all of the claims at issue contained the limitation of determining the material processing rate by adding (1) the sum of the material discharge rates of the individual material ingredients to a common hopper, and (2) the discharge rate of the blended materials from the common hopper to the processing machine. *See* Order of September 30, 1997, ¶ 5. We agree with that analysis, and therefore our discussion of the limitations at issue in the context of claim 1 applies to all of the claims at issue on appeal.

Claim 1 provides:

1. A method of metering different material ingredients for discharge to a material processing machine, comprising:

[a] delivering to a common hopper a plurality of individual material ingredients at controllable individual material discharge rates,

[b] discharging material from said common hopper to said processing machine at a *discharge rate,*

[c] determining loss of weight of material in said hopper due to discharge of material therefrom,

[d] determining the material processing rate of the processing machine from the sum of the material discharge rates of the ingredients to the common hopper and *the discharge rate* of the

material from the common hopper to the processing machine, and

[e] controlling the material discharge rates of the ingredients to the common hopper in response to said determined material processing rate as needed to maintain a preset recipe of said blended ingredients at said determined material processing rate.

(emphasis and paragraphing added).

Before the district court, the parties disputed whether "discharge rate" emphasized above in clauses [b] and [d] should be given the same meaning throughout the claim, as urged by Process Control, or whether the second emphasized occurrence means "change in weight of the common hopper," as urged by HydReclaim. Based on the written description, the district court construed the claim in accordance with HydReclaim's assertion, namely that the occurrence of "discharge rate" in clause [d] means "change in weight of the common hopper." *See* Order of September 30, 1997, ¶¶ 32–33. The district court determined that the patentee had specifically defined the second occurrence of "discharge rate" in his written description to mean "change in weight," relying on the following passages from the written description for its claim construction:

A master computer control unit is coupled to the weighing device of the common hopper for determining a discharge rate of the ingredients from the common hopper to the processing machine based on the *weight loss of the common hopper over time.* '943 Patent, col. 3, ll. 35–39 (emphasis added).

A weighing device 40, such as a precision, offset, cantilever load cell, is operably connected to and solely supports the common hopper 30 at the discharge end 30a. The weighing device 40 detects the *change in weight* of the blend M therein during the admission and discharge of material to and from the com-

mon hopper 30. '943 Patent, col. 5, ll. 44–50 (emphasis added).

A master digital computer control unit 50 (FIG.4) is coupled via interface 50a (e.g., RS485 serial network interfaces) to the weighing device 40 of the common hopper 30 for receiving *weight loss signals* therefrom (analog to digital converted signals) *over time* and determining a blend discharge rate from the common hopper 30 to the extrusion machine 5. '943 Patent, col. 5, ll. 50–57 (emphasis added).

The master computer control unit 50 continually determines minute differential *weight changes* in the common hopper 30 and calculates the precise differences in the sum of the material discharge rates of the metering units 10 and the extrusion rate. '943 Patent, col. 7, ll. 46–50 (emphasis added).

The district court concluded that "[i]f 'discharge rate' is construed as Process Control asserts [*i.e.*, the same as the first occurrence of discharge rate], this specification would be nonsensical." Order of September 30, 1997, ¶ 33.

## C.

On appeal, Process Control challenges the district court's claim construction on various theories. First, as in the district court, Process Control asserts that "discharge rate" in clauses [b] and [d] should be given the same meaning throughout the claim, particularly as both occurrences include the language "from said [or the] common hopper to said [or the] processing machine." This construction, notes Process Control, obviates the lack of antecedent basis for the second occurrence of "discharge rate" in clause [d] and a concomitant finding of invalidity under 35 U.S.C. § 112, ¶ 2 which necessarily results from the district court's claim construction.

Second, Process Control argues that "discharge rate" is defined in the claims

themselves to mean "discharging [blended] material *from* said common hopper *to* said processing machine at a discharge rate." '943 Patent, claim 1, clause [b] (emphasis added). The references in the written description relied upon by the district court to redefine "discharge rate" to mean "change in weight" do not clearly redefine that term and, in any event, would redefine the term contrary to the explicit definition of that term in the claim itself.

Third, Process Control notes that claims 7–14 include the limitation of a "second weighing means . . . for detecting a change in weight of the ingredients" in the common hopper. According to Process Control, this demonstrates that the subsequent reference to "discharge rate" in clause [d] could not mean "change in weight" as determined by the district court, as use of different terms in a single claim indicates that those terms are not synonymous.

In response, HydReclaim defends the district court's claim construction, urging that the claims are to be construed in a way which will preserve their validity and secure the patentee his actual invention. This can only be done, asserts HydReclaim, by construing the claims in light of the written description, in "the natural manner in which they make sense." Process Control's asserted claim construction, as its own witnesses admitted, would require "determining something from some entity which includes what you are trying to measure," a construction that clearly does not make sense. HydReclaim also refutes Process Control's antecedent basis argument by asserting that "a discharge rate" in clause [b] is different from "the discharge rate" in clause [d], the former being an undetermined flow rate at that stage of the algorithm, the latter being an actually calculated flow rate based on loss of weight of material in the common hopper over time.

## D.

We agree with Process Control, although the parties present us with competing canons of claim construction with which to interpret the claims at issue on appeal. It is true, as HydReclaim urges, that we should attempt to construe the claims to preserve their validity, *see Smith v. Snow*, 294 U.S. 1, 14, 55 S.Ct. 279, 79 L.Ed. 721 (1935) (holding that "if the claim were fairly susceptible to two constructions, that should be adopted which will secure to the patentee his actual invention"); *Modine Mfg. Co. v. United States Int'l Trade Comm'n*, 75 F.3d 1545, 1556, 37 USPQ2d 1609, 1617 (Fed.Cir.1996) ("When claims are amenable to more than one construction, they should when reasonably possible be interpreted so as to preserve their validity."), reading them in light of the specification, *see Vitronics, Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582, 39 USPQ2d 1573, 1576 (Fed.Cir. 1996).

However, contrary to HydReclaim's assertions, this is not a case where the claim language is reasonably susceptible to two constructions. Rather, the claim as written by the patentee is susceptible to only one meaning. It is clear from the language of the claim itself that the term "a discharge rate" in clause [b] is referring to the same rate as the term "the discharge rate" in clause [d]. This conclusion necessarily results from the identical language associated with the term "discharge rate" in both clauses [b] and [d], namely "from the common hopper to the material processing machine." The presence of that identical language clearly indicates that "a discharge rate" in clause [b] is the same as "the discharge rate" in clause [d], both referring to the rate (in units of weight per unit of time) that material is discharged from the common hopper to the material processing machine. In addition, that conclusion avoids any lack of antecedent basis problem for the occur-

rence of "the discharge rate" in clause [d].[1]

■ The district court's attempt to use the written description to circumvent the plain language of the claim and the clear definition of the disputed claim language found therein was inappropriate. While we have held many times that a patentee can act as his own lexicographer to specifically define terms of a claim contrary to their ordinary meaning, see, e.g., Digital Biometrics v. Identix, Inc., 149 F.3d 1335, 1344, 47 USPQ2d 1418, 1424 (Fed.Cir. 1998), the quoted portions from the written description above do not so clearly redefine "the discharge rate" in clause [d] so as to put a reasonable competitor or one reasonably skilled in the art on notice that the patentee intended to so redefine that claim term. See Hoganas AB v. Dresser Indus., Inc., 9 F.3d 948, 951 n. 15, 28 USPQ2d 1936, 1939 n. 15 (Fed.Cir.1993) (reasoning that the reasonable competitor standard is analytically equivalent to the reasonably skilled in the art standard). More importantly, we do not permit courts to redraft claims. See Quantum Corp. v. Rodime, PLC, 65 F.3d 1577, 1584, 36 USPQ2d 1162, 1168 (Fed.Cir.1995) ("Although we construe claims, if possible, so as to sustain their validity, ... it is well settled that no matter how great the temptations of fairness or policy making, courts do not redraft claims."); Becton Dickinson & Co. v. C.R. Bard Inc., 922 F.2d 792, 799 n. 6, 17 USPQ2d 1097, 1102 n. 6 (Fed.Cir.1990) ("Nothing in any precedent permits judicial redrafting of claims. At most there are admonitions to construe words in claims narrowly, if possible, so as to sustain their validity."). Where, as here, the claim is susceptible to only one reasonable construction, the canons of claim construction cited by HydReclaim are inapposite, and we must construe the claims based on

the patentee's version of the claim as he himself drafted it. See Hoganas, 9 F.3d at 951, 28 USPQ2d at 1939 ("It would not be appropriate for us now to interpret the claim differently just to cure a drafting error.... That would unduly interfere with the function of claims in putting competitors on notice of the scope of the claimed invention.").

## E.

■ Our conclusion that the occurrences of "discharge rate" in clauses [b] and [d] of claim 1 are to be interpreted as referring to the same rate has the following implication for clause [d]. It cannot be disputed that the "material processing rate of the processing machine" is identical to the "discharge rate of the material from the common hopper to the processing machine." The material processing rate of the extruder (the processing machine) is dictated by the rate of the material fed to it, i.e., the discharge rate of the material from the common hopper. As a result of our claim construction, clause [d] does not make "sense" as HydReclaim itself realizes and concedes. What HydReclaim fails to realize is that such a nonsensical result does not require the court to redraft the claims of the '943 patent. Rather, where as here, claims are susceptible to only one reasonable interpretation and that interpretation results in a nonsensical construction of the claim as a whole, the claim must be invalidated, thus preventing unduly burdening competitors who must determine the scope of the claimed invention based on an erroneously drafted claim.

## II. INVALIDITY

### A.

The question that remains is under what theory are the claims of the '943 patent

---

1. It should be noted that the lack of antecedent basis problem would not be present in those claims specifically reciting "change in weight" (i.e., claims 7–14). Nevertheless, those claims would suffer from the infirmity of using two different phrases, "change in weight" and "discharge rate," to mean the same thing in the same claim if we were to adopt HydReclaim's and the district court's claim construction.

invalid. The district court addressed invalidity of the '943 patent under numerous theories: (1) as vague and indefinite under 35 U.S.C. § 112, ¶ 1, *see* Order of September 30, 1997, ¶¶ 53–57; (2) as on-sale under 35 U.S.C. § 102(b), *see id.* ¶¶ 58–69; (3) as publicly known under 35 U.S.C. § 102(a), *see id.* ¶¶ 70–76; (4) as improperly derived under 35 U.S.C. § 102(f), *see id.* ¶¶ 77–84; (5) as previously invented under 35 U.S.C. § 102(g), *see id.* ¶¶ 85–96; and (6) as obvious under 35 U.S.C. § 103, *see id.* ¶¶ 97–108. The district court held the '943 patent valid in the face of all of these challenges. Process Control only appealed to us the district court's conclusion of nonobviousness.

Nevertheless, Process Control asserts on appeal, in the context of claim construction, that the district court erred in its claim construction because the use of two different definitions for the identical term "discharge rate" creates ambiguity and results in lack of antecedent basis for the second occurrence. For its part, HydReclaim concedes that the claim "makes no sense" if we are to adopt the construction that Process Control urges, which we indeed have done as described above. Process Control responds that this construction presents a question of enablement rather than claim construction. Thus, although the parties discussed whether the properly construed claim "makes no sense" primarily in the context of indefiniteness

and claim construction, we consider their arguments in the district court and in their briefs to us regarding the claims "mak[ing] no sense" as preserving and raising the issues of utility (and operability) under 35 U.S.C. § 101 and enablement under 35 U.S.C. § 112, ¶ 1 on appeal.

### B.

 Lack of enablement and absence of utility are closely related grounds of unpatentability. *See Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 956, 220 USPQ 592, 596 (Fed.Cir.1983). The enablement requirement of 35 U.S.C. § 112, ¶ 1 requires that the specification adequately discloses to one skilled in the relevant art how to make, or in the case of a process, how to carry out, the claimed invention without undue experimentation.[2] *See Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1365, 42 USPQ2d 1001, 1004 (Fed.Cir.1997). The utility requirement of 35 U.S.C. § 101 mandates that any patentable invention be useful and, accordingly, the subject matter of the claim must be operable. *See Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1571, 24 USPQ2d 1401, 1412 (Fed.Cir. 1992). If a patent claim fails to meet the utility requirement because it is not useful or operative, then it also fails to meet the how-to-use aspect of the enablement requirement.

 In *Raytheon*, we held certain process claims invalid, stating

---

**2.** The district court determined that the claims of the '943 patent were not vague or indefinite under 35 U.S.C. § 112. *See* Order of September 30, 1997, ¶¶ 53–57. We note, however, that definiteness and enablement are analytically distinct requirements, even though both concepts are contained in 35 U.S.C. § 112. The definiteness requirement of 35 U.S.C. § 112, ¶ 2 is a legal requirement, based on the court's role as construer of patent claims, that is reviewed *de novo. See, e.g., Personalized Media Communications v. Int'l Trade Comm'n*, 161 F.3d 696, 705, 48 USPQ2d 1880, 1888 (Fed.Cir.1998). Definiteness requires the language of the claim to set forth clearly the domain over which the applicant seeks exclusive rights. *See* 35

U.S.C. § 112, ¶ 2 ("[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention"). The test for whether a claim meets the definiteness requirement is "whether one skilled in the art would understand the bounds of the claim when read in light of the specification." *Personalized Media*, 161 F.3d at 705, 48 USPQ2d at 1888. However, the problem in the present case is not the clarity of the claim language preventing one skilled in the art from determining the scope of the claim.

[b]ecause it is for the invention as claimed that enablement must clearly exist, and because the impossible cannot be enabled, a claim containing a limitation impossible to meet may be held invalid under § 112. Moreover, when a claim requires a means for accomplishing an unattainable result, the claimed invention must be considered inoperative as claimed and the claim must be held invalid under either § 101 or § 112 of 35 U.S.C.

724 F.2d at 956, 220 USPQ at 596. As the passage illustrates, when an impossible limitation, such as a nonsensical method of operation, is clearly embodied within the claim, the claimed invention must be held invalid. While an otherwise valid patent covering a meritorious invention should not be struck down simply because of the patentee's misconceptions about scientific principles concerning the invention, *see Fromson v. Advance Offset Plate, Inc.,* 720 F.2d 1565, 1570, 219 USPQ 1137, 1140 (Fed.Cir.1983), when "the claimed subject matter is inoperable, the patent may indeed be invalid for failure to meet the utility requirement of § 101 and the enablement requirement of § 112," *Brooktree Corp.,* 977 F.2d at 1571, 24 USPQ2d at 1412 (citing *Raytheon Co.,* 724 F.2d at 956, 220 USPQ at 596).

### C.

Utility is a factual issue, which we review for clear error. *See, e.g., In re Cortright,* 165 F.3d 1353, 1356, 49 USPQ2d 1464, 1465 (Fed.Cir.1999). Whether a disclosure is enabling under 35 U.S.C. § 112, ¶ 1 is a legal conclusion, based upon underlying factual inquiries, and subject to *de novo* review. *See, e.g., Bruning v. Hirose,* 161 F.3d 681, 686, 48 USPQ2d 1934, 1938 (Fed.Cir.1998).

In the present case, it is undisputed by both HydReclaim and Process Control that a consistent definition of "dis-

charge rate" in clauses [b] and [d] of claim 1 leads to a nonsensical conclusion. Due to the principle of conservation of mass, the material processing rate of the processing machine must necessarily be equal to the discharge rate of the material from the common hopper to the processing machine in a steady-state process. Consequently, clause [d] of claim 1, which reads:

> [d] determining the material processing rate of the processing machine from the sum of the material discharge rates of the ingredients to the common hopper and the discharge rate of the material from the common hopper to the processing machine

embodies an inoperable method that violates the principle of conservation of mass. In other words, clause [d] requires determining a quantity from the sum of that exact same quantity and something else, or symbolically, $A = A + B$, which is impossible, where, as here, B is not equal to zero. Accordingly, we hold that the correctly construed claims are invalid because they are inoperative, and thus the claims fail to comply with the utility and enablement requirements of 35 U.S.C. §§ 101 and 112, ¶ 1, respectively.

### CONCLUSION

Given our conclusion that the claims of the '943 patent are invalid, we vacate the district court's finding of infringement. The issues of willful infringement, damages, nonobviousness, enforceability, and exclusion of witnesses therefore need not be addressed.

### COSTS

Each party will bear its own costs.

*REVERSED–IN–PART and VACATED–IN–PART*