**BANYAN LICENSING, L.C., Plaintiff,**

v.

**ORTHOSUPPORT INTERNATIONAL, INC., Defendant.**

**No. 3:00CV7038.**

United States District Court,
N.D. Ohio,
Western Division.

Feb. 14, 2001.

Michael S. Connor, John A. Wasleff, Alston & Bird, Charlotte, NC, Ernest B. Lipscomb, Alston & Bird, Charlotte, NC, Joseph H. Shull, Venable, Baetjer & Howard, Washington, DC, for Banyan Licensing, L.C.

Jon E. Hokanson, Small Larkin LLP, Los Angeles, CA, Margaret J. Lockhart, Cooper, Walinski & Cramer, Toledo, OH, for Orthosupport International, Inc.

Michael S Scalzo, Marshall & Melhorn, Toledo, OH, for Allied Foam & Packaging Products, Inc., Meijer Companies, Ltd. Inc.

CARR, District Judge.

This is a patent infringement case in which the parties have filed cross-motions for summary judgment on the issue of infringement. For the reasons that follow, I conclude that summary judgment on the issue of literal infringement should be granted to the plaintiff.

The patent in suit ("771 patent) is for an orthopedic pillow that can be placed between the thighs of a person, so that, while the person is sleeping, the legs remain separated and less stress is placed on the person's back and hips. In addition, the design of the plaintiff's pillow is intended to keep the pillow in place between the thighs even if the person turns from side to side while sleeping.

The allegedly infringing articles, the "Sleep Buddy" and "Sleep Buddy Plus," while serving a similar orthopedic function, differ in size, configuration, and appearance from plaintiff's pillow. The plaintiff contends that, despite these differences, the defendant's pillows infringe its patent. If either product does not literally infringe, plaintiff also asserts, it infringes under the doctrine of equivalents.

As may be seen in the drawing of the preferred embodiment of the plaintiff's pillow, it has roughly an hourglass (or dogbone or dumbbell) shape, when viewed laterally along its longitudinal axis. The front and back of the pillow are flat, while its top and bottom are concave, thereby creating a symmetrical cavity for the user's thighs. The ends are substantially flat, but curve where they meet the top and bottom of the pillow to form rounded edges instead of corners.

The ends of the defendant's pillows are considerably more rounded in appearance

than the plaintiff's pillow, as that pillow appears in the diagram of its preferred embodiment. Cusps on the tops and bottoms of the defendant's pillows frame the concave openings for the user's thighs. The purpose of these cusps is to keep the pillow in place while in use. The surface of each of the concave openings contains indentations, which allow air to circulate while the pillow is between the user's legs.

The Sleep Buddy Plus has a removable insert between the top and bottom of the pillow. This makes the pillow adjustable: with the insert removed, the pillow better fits a person with smaller thighs and/or a narrower pelvis; with the insert in, the pillow is more comfortable for a person with larger thighs and/or a wider pelvis. With the insert in, the ends of the Sleep Buddy Plus are flat in the center, but curve back to form the cusps overhanging the concavities.

Defendant argues that neither of its products literally infringes the '771 patent. Moreover, according to the defendant, the plaintiff is estopped from applying the doctrine of equivalents. In any event, the defendant contends, its product does not infringe under that doctrine, even if it is available to the plaintiff.

### Analysis

The Federal Circuit has established that proving direct infringement requires a two-step analysis:

> The claimed invention must first be defined, a legal question of claim interpretation. Second, the trier of fact must determine whether the claims, as properly interpreted, cover the accused device or process ... the burden of proof is on [the] patent owner, to prove infringement by a preponderance of the evidence. Such proof must show that every limitation of the patent claims asserted to be infringed is found in the accused device, either literally or by an equivalent.

*SmithKline Diagnostics v. Helena Laboratories Corp.*, 859 F.2d 878, 889 (Fed.Cir. 1988).

Despite differences in appearance, the essential form, or geometry, of defendant's pillows matches the elements of the plaintiff's '771 patent. A review of the patent claims and a comparison of the products shows that every limitation of the patent which plaintiff asserts to be infringed is found in defendant's products.

Claim 1 describes the invention as a "cushion device for therapeutic use by humans." There appears to be no dispute that this describes the patented pillow and the defendant's pillows.

The patented device comprises "an elongated resilient member having opposite end sections joined to a medial section and having a major longitudinal axis extending through said end sections and said medial section." The patented device and defendants' pillows share this configuration.

The patented "resilient member" includes "substantially planar opposite side walls respectively spanned by a front wall, a rear wall, a first outer face, and a second outer face." The patented device and defendant's pillows share these features.

■ Defendant argues that the claims of the patent require the front and rear walls to be flat, or substantially flat. Defendant claims that the Sleep Buddy does not have substantially flat front and rear walls. Instead, according to the defendant, the front and rear of the Sleep Buddy are rounded, whereas the front and rear of the patented device is flat.[1]

---

1. A portion of the front and rear walls of the Sleep Buddy Plus is flat when the insert is in place. Thus, defendant's arguments about flat walls applies only to the Sleep Buddy.

Contrary to defendant's argument, nothing in the claims of the patent require the front and rear walls to be flat, or substantially flat. All that is required by the claim is that the pillow have two walls, one at the front and one at the rear. As the term wall is used here, it plainly indicates an end to the pillow, or an edge; it simply requires that the pillow does not continue in existence forever but has an finite perimeter, or, walls. Thus, the fact that a portion of the front and rear walls of plaintiff's pillow are flat, or nearly so, while the front and rear walls of the Sleep Buddy are round does not matter. As anyone familiar with the Guggenheim Museum knows, not all walls are flat, and a structure can be round in form and have walls.

To the extent that defendant attempts to distinguish its pillows by asserting that the pillow has no walls at all, but rather two buttresses, its argument is not well taken. As plaintiff asserts, the rounded ends of defendant's pillows serve the same function as the rear and end walls of the patented device. Specifically, they provide an end to the pillow and create the border between the pillow and the empty space beyond the pillow. Defendant cannot escape this fact by referring to the ends of its pillow as buttresses instead of walls. The meaning of the term "walls" in the patent is clear, and defendant's pillows contain front and rear walls within the scope of the invention.

The outer faces of the patented device each have "an intermediate leg engaging area proximate said medial section, each of said leg engaging areas being smoothly concave in relationship to and along said major longitudinal axis and symmetrical thereto." This part of the claim describes openings on the top and bottom of the pillow into which the user's thighs fit. The patented device and defendants' pillows share this configuration.

▓ Defendant claims that the surfaces of the Sleep Buddy's leg engaging area are not "smoothly concave." This argument is based on the fact that the Sleep Buddy has indentations that enable air to circulate when the pillow is between the user's thighs. As a result, defendant argues, the surfaces are not "smoothly concave." [2]

Were one to run a finger along the concavities, one certainly would sense that the Sleep Buddy is not "smooth" in the sense that it is an unbroken surface, just as one can see the ventilation indentations when looking at the Sleep Buddy. The description, "smoothly concave," should, however, be interpreted and applied in light of the function and purpose of the patented pillow—to make the user more comfortable while sleeping.[3] In use, there can be no perceptible unevenness in the concavities of the patented pillow or the Sleep Buddy; if there were, neither would be comfortable or marketable. As defendant describes its pillows, "the dominant shapes ... are the ... elliptical leg clasping regions." This description of the leg clasping regions demonstrates what common sense requires as to the function of the curve. The elliptical regions, just like the "smoothly concave" leg engagement areas, provide a curved depression for the user's thighs to rest in. If the dominant shape of defendant's region is elliptic, then

**2.** The Sleep Buddy Plus has smaller indentations. If the Sleep Buddy infringes, despite its larger indentations, then the Sleep Buddy Plus, with smaller indentations, necessarily infringes.

**3.** See Bausch & Lomb, Inc. v. Barnes–Hind/Hydrocurve, Inc., 796 F.2d 443, 450 (Fed.Cir.1986) ("smooth" in patent claim for a contact lens does not mean absolutely ridgefree, but rather smooth enough to serve the inventor's purpose of creating an edge that would neither inflame nor irritate the eyelid of the wearer).

it is dominantly a smooth curve, regardless of small pores allowing air circulation.

I conclude, accordingly, that the Sleep Buddy, despite the presence of the ventilation indentations, has "smoothly concave" surfaces, within the scope of the patent.

The outer faces, according to the patent, further include "a pair of smooth bulges, each of said bulges proximate one of the said end sections, said bulges being convex in relation to and along said longitudinal axis, said bulges being symmetrical to one another, where one of said bulges extends from said front wall to said medial section and the other said bulge extends from said rear wall to said medial section."

■ Defendant contends that its pillows have "buttresses," not bulges, and thus do not infringe the patent. When viewed from the aspect of the longitudinal axis, which the patent uses as a reference point for describing other aspects of the pillow's configuration, the defendant's pillows display symmetrical bulges, as described in the patent. Partial segments of a circular form, such as those which shape the end portions of the defendant's devices, are bulges, even if the defendant calls them buttreses.

I conclude, accordingly, that the elements of the Sleep Buddy and Sleep Buddy Plus replicate all of the elements found in Claim 1 of the '771 patent, and that the defendants' devices infringe the patent.

Finally, defendant argues that it does not infringe, and plaintiff argues that defendant does infringe, Claim 6 of the patent. As defendant points out, Claim 6 depends from Claim 1, and therefore requires all of the limitations of Claim 1. Thus, because defendant's pillows infringe Claim 1, they necessarily infringe Claim 6.

Having concluded that the defendant's pillows literally infringe the '771 patent, it is not necessary to address the parties' claims regarding the doctrine of equivalents.

It is, therefore,

ORDERED THAT the defendant having been found to infringe the plaintiff's patent, trial in this cause shall be limited to the issue of damages.

So ordered.