**BANYAN LICENSING, Plaintiff,**

v.

**ALLIED FOAM & PACKAGING, PRODUCTS, INC., et al, Defendant.**

**No. 3:00CV7038.**

United States District Court, N.D. Ohio, Western Division.

Feb. 14, 2001.

Michael S. Connor, Alston & Bird, Charlotte, NC, Ernest B. Lipscomb, Alston & Bird, Charlotte, NC, Joseph H. Shull, Venable, Baetjer & Howard, Washington, DC, John A. Wasleff, Alston & Bird, LLP, Charlotte, NC, for Banyan Licensing, L.C.

Margaret J. Lockhart, Cooper, Walinski & Cramer, Toledo, OH, Jon E. Hokanson, Small Larkin LLP, Los Angeles, CA, for Orthosupport Intern., Inc.

Michael S Scalzo, Marshall & Melhorn, Toledo, OH, for Allied Foam & Packaging Products, Inc., Meijer Companies, Ltd., Inc.

CARR, District Judge.

This is a patent infringement case in which the defendant has filed a motion for relief from an order denying its motion for partial summary judgment and renewal of that motion. (Doc. 72). On reconsideration of that order, I reconfirm the decision reached therein—namely, that the patent in suit is not invalid.

The devices at issue in this case—pillows to place between the thighs to relieve musculoskeletal stress and pain while a person is sleeping—are technologically unsophisticated. There are, however, two principal problems with the wording of the claims. These relate to: 1) the patent's description of the longitudinal axis of the patented pillow as being "a length no less than that of a human thigh," and 2) referring in claim 6 of the patent to "a cushioned device as defined in claim 7," when there is no claim 7 in the patent.

In my original order, I concluded that, notwithstanding potentially inconsistent claim constructions, a person skilled in the art can comprehend precisely what has been patented. On consideration of the patent in its entirety, including the written description, preferred embodiment, and diagrams, along with the claims, I concluded it is apparent that the longitudinal axis of the patented pillow is defined by reference to the thickness, rather than the length, of the human thigh. In light of this understanding, which I deemed to derive readily from the patent as a whole, I concluded that the patent was valid.

The defendant's motion for relief from judgment asks me to consider handwritten notations on a preliminary draft of the patent as evidence of the meaning that the draftsman intended to give to the longitudinal axis. Those notations make clear, the defendant asserts, that the lawyer overseeing the drafting of the patent instructed his associate to define the longitudinal axis of the device by reference to the thickness, rather than the length, of the human thigh. The associate failed to follow that instruction, and his error (using thigh length, rather than thickness as the benchmark) was caught by neither the lawyer submitting the patent, the inventor, nor the patent examiner.

To the extent that the defendant desires that I accept this evidence as proof of the patentee's intent, it is not admissible. The Federal Circuit expressly prohibits reference to extrinsic evidence of this sort in construing the meaning of a patent's terms. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed.Cir.1995) (en banc). The court noted that such extrinsic

evidence would be admissible to clarify an ambiguity in a contract, will, or deed, and thereby to ascertain the intent of the parties to such instruments. But it also made clear that a "patent, however, is not a contract ... and patent infringement actions have never been viewed as breach of contract actions." *Id.* at 985.

I do not, accordingly, consider this extrinsic evidence in construing the meaning of claims or determining the validity of the patent. At most, such evidence explains why the patent contains the language that it does; that evidence cannot, however, be used to construe the patent, or to support a finding of either validity or invalidity.

The Federal Circuit has made clear that it does not "permit courts to rewrite claims." *Process Control Corp. v. HydReclaim Corp.,* 190 F.3d 1350, 1357 (Fed.Cir. 1999). *Accord, Quantum Corp. v. Rodime, PLC,* 65 F.3d 1577, 1584 (Fed.Cir.1995) ("Although we construe claims, if possible, so as to sustain their validity, ... it is well settled that no matter how great the temptations of fairness or policy making, courts do not redraft claims."); *Becton Dickinson & Co. v. C.R. Bard Inc.,* 922 F.2d 792, 799 n. 6 (Fed.Cir.1990) ("Nothing in any precedent permits judicial redrafting of claims. At most there are admonitions to construe words in claims narrowly, if possible, so as to sustain their validity.").

Despite the rigor of this stricture, I remain convinced that the equally fundamental obligation to "construe claims, if possible, so as to sustain their validity," *Quantum, supra,* justifies my original decision upholding validity in this case. No reader of the claims—much less, a reader skilled in the art—could read them, despite their poor draftsmanship, without understanding precisely what was patented.

The Supreme Court has instructed that courts "should proceed in a liberal spirit, so as to sustain the patent and the construction claimed by the patentee himself, if this can be done consistently with the language which he has employed." *Klein v. Russell,* 86 U.S. 433, 466, 19 Wall. 433, 22 L.Ed. 116 (1873). I confirm my earlier decision that the language employed in the patent here, even if poorly drafted, can be read to sustain the validity of the patent.

When the questionable language describing the longitudinal axis of the pillow is placed in context, it is apparent that the length of the pillow is described in relation to the thickness of a human thigh. The description of the pillow provides that the pillow is to be sandwiched between the legs of the user, and further describes two "leg engagement areas" wherein the thighs would be. If the legs are to be "engaged" in the pillow, then clearly the pillow would be as long as the thigh is wide. If the pillow were several inches longer, the legs would not be engaged by it. While a more careful description of the length of the pillow should have been provided, it is apparent from the patent precisely what is being described: the pillow fits between the user's legs, and the concave "leg engagement areas" cradle and conform to the user's thighs.

As detailed in my earlier decision, the numerous diagrams included with the patent demonstrate that the longitudinal axis of the pillow corresponds to the thickness of the thigh rather than the length of the femur. Additionally, the suggested measurement for a "proper fit for most individuals" includes a longitudinal axis of ten inches. As discussed in my earlier decision, this measurement would relate to the length of the femur of two percent of adults. Thus, especially when construed in light of the pillow's orientation between the legs of the user, and the description that the pillow "engages" the leg, the length of the longitudinal axis must relate to the thickness of a typical human thigh.

Once the pillow has been placed between the legs in the manner described by the text and shown in the diagrams, the longitudinal axis runs parallel to a line from the user's navel to his back, not along his leg from his hip to his knee. Specifically, the length of the pillow corresponds to the thickness of the thigh, not the length of the femur. The text of the patent, the diagrams illustrating the product, and the specific measurements given as the proper fit for most individuals are all consistent with this interpretation. The patent can reasonably be read as stating that the length of the pillow is not less than the *length* of the *thickness* of a typical human thigh. Such reading does not require me to create new terms in the text of the patent, but rather is the result of reading the terms of the patent in their proper context.[1]

In reaching this conclusion, I have looked no further than the "obvious sources in the claim language and the specification," *Deuterium Corp. v. United States*, 16 Cl.Ct. 454, 460 (Cl.Ct.1989), to understand the patent. Here, as in *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed.Cir.1996), the definition of the disputed and determinative term "is clear from a reading of the claim itself and the patent specification." I find no "genuine ambiguity in the claims, after consideration of all available intrinsic evidence, . . . ." *Id.*

The patent provides a plain explanation, and a clear illustration of the product it describes. Thus, when one skilled in the art reads the claim regarding the length of the longitudinal axis, along with the rest of the patent, they will be "reasonably apprised of the scope of the invention." *Zol-*

*tek v. United States*, 48 Fed Cl. 290, 301 (2000). Even if the wording of the patent is careless, no competitor is unduly burdened in determining the scope of the invention. The invention is not technologically difficult, and is clear from the patent.

In summary, I remain unpersuaded that the problems created by remarkably inattentive drafting justify invalidating the plaintiff's patent. Defendant's motion for relief from judgment shall, accordingly, be overruled.

So ordered.

---

1. Even if a reading of the disputed language would ordinarily indicate that reference was made to the length of a typical femur, the patent as a whole makes clear the drafter's intended meaning. "The words of a claim will be given their ordinary meaning unless it appears that the inventor used them differently." *ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576, 1579 (Fed.Cir.1988) (internal citation omitted).