**BANYAN LICENSING, L.C., Plaintiff–Appellee,**

v.

**ORTHOSUPPORT INTERNATIONAL, INC., Defendant–Appellant.**

No. 01–1309.

United States Court of Appeals, Federal Circuit.

March 21, 2002.

Rehearing and Rehearing En Banc Denied May 14, 2002.

Before SCHALL, GAJARSA, and LINN, Circuit Judges.

LINN, Circuit Judge.

OrthoSupport International Inc. ("OrthoSupport") appeals from a decision of the United States District Court for the Northern District of Ohio, 00–CV–7038, which granted partial summary judgment in favor of Banyan Licensing, L.C. ("Banyan"), holding that OrthoSupport's Sleep Buddy™ and Sleep Buddy Plus™ pillows directly infringe claims 1 and 6 of U.S. Patent No. 5,216,771 ("the '771 patent"). *Banyan Licensing, L.C. v. Orthosupport International,* 134 F.Supp.2d 903 (N.D.Ohio 2001). The district court had previously denied OrthoSupport's motion for partial summary judgment that claims 1–6 were invalid. *Banyan Licensing, L.C. v. Allied Foam & Packaging,* 134 F.Supp.2d 907 (N.D.Ohio 2001). We conclude that the district court properly construed the language of the claims in dispute, and properly held that no reasonable jury could find that the accused pillows did

not literally infringe claims 1 and 6. Thus, the district court's grant of Banyan's motion for summary judgment of infringement and its denial of OrthoSupport's motion for summary judgment of invalidity are *affirmed.*

## I.

The main issue presented by OrthoSupport on appeal is one of claim construction, specifically, whether the district court properly construed the claim limitation, "said longitudinal axis defines a length of no less than that of a human thigh." In construing claims, the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to "particularly point [ ] out and distinctly claim [ ] the subject matter which the patentee regards as his invention." 35 U.S.C. § 112, paragraph 2. *See generally Interactive Gift Express, Inc. v. Compuserve Inc.,* 256 F.3d 1323, 1331, 59 USPQ2d 1401, 1406–07 (Fed.Cir.2001).

"It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history. Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language." *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582, 39 USPQ2d 1573, 1576 (Fed.Cir.1996) (citation omitted). All intrinsic evidence is not equal however. *See id.* at 1582, 90 F.3d 1576, 39 USPQ2d at 1576–77 (delineating a hierarchy among the intrinsic evidence).

First, we look to the claim language. *See id.; Pitney Bowes, Inc. v. Hewlett-Packard Co.,* 182 F.3d 1298, 1305, 51 USPQ2d 1161, 1165 (Fed.Cir.1999) ("The starting point for any claim construction must be the claims themselves."); *Bell*

*Communications Research, Inc. v. Vitalink Communications Corp.,* 55 F.3d 615, 620, 34 USPQ2d 1816, 1819 (Fed.Cir.1995) (noting first the mandate to consult the claims). Then we look to the rest of the intrinsic evidence, beginning with the specification and concluding with the prosecution history, if in evidence. *See Vitronics,* 90 F.3d at 1582, 39 USPQ2d at 1576–77 (delineating this order); *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979, 34 USPQ2d 1321, 1329 (Fed.Cir.1995) ("Claims must be read in view of the specification, of which they are a part."), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996); *Bell Communications,* 55 F.3d at 620, 34 USPQ2d at 1819 (noting first the mandate to consult the claims, followed by inspection of the rest of the specification).

If the claim language is clear on its face, then our consideration of the rest of the intrinsic evidence is restricted to determining if a deviation from the clear language of the claims is specified. A deviation may be necessary if "a patentee [has chosen] to be his own lexicographer and use terms in a manner other than their ordinary meaning." *Vitronics,* 90 F.3d at 1582, 39 USPQ2d at 1576. A deviation may also be necessary if a patentee has "relinquished [a] potential claim construction in an amendment to the claim or in an argument to overcome or distinguish a reference." *Elkay Mfg. Co. v. Ebco Mfg. Co.,* 192 F.3d 973, 979, 52 USPQ2d 1109, 1113 (Fed.Cir. 1999). If, however, the claim language is not clear on its face, then our consideration of the rest of the intrinsic evidence is directed to resolving, if possible, the lack of clarity.

## II.

The district court held that the length of the longitudinal axis of the patented pillow corresponds to the length of a human thigh as measured from the front

of a human (belly button side) to the back. The district court called this dimension the "thickness" of the thigh. We conclude that this definition is consistent with the intrinsic record.

Looking first at the claim language, OrthoSupport contends that the plain meaning of the "length" of a human thigh refers to the distance from one's hip to knee. However, a "length" does not necessarily refer to an object's longest dimension. The *Oxford English Dictionary* provides the following three definitions for "length:"

1. The linear magnitude of any thing as measured from end to end; 2. the greatest of the three dimensions of a body or figure; 3. longitudinal extent.

*Oxford English Dictionary* 893 (2d ed.1989). Thus, the length as used in the claim can be the "distance from end to end" of a person's thigh as measured along the longitudinal axis of the pillow when the pillow is placed between the person's thighs. Alternatively, the length can be the greatest dimension of the thigh. Looking at the claim in isolation, the term is somewhat ambiguous.

We next look to the specification, which provides only one reference to the disputed claim language.

Pillow 10 has a major longitudinal axis 100 extending through the medial section 12 and the end sections 14, 16 that defines a length no less than a typical human thigh in the preferred embodiment.

'771 patent, col. 3, II. 53–56. Figures 1 and 5 show that the longitudinal axis 100 is oriented in the fore to aft direction of the body when the pillow is placed between a person's thighs. When reading the claim in light of the specification, it is clear that the claim term "length" refers to the "magnitude of [the thigh] as measured from end to end" along the longitudinal axis of the pillow when in use. The dimen-

sion of the thigh along that axis is the dimension of a front to back diameter of the thigh not the dimension from hip to knee, which is a dimension normal to the "longitudinal axis." While the definition of "length" in the claim may be ambiguous on its face, our review of the specification, drawings, and prosecution history indicates that the term "length" is only susceptible to the meaning recognized by the district court. Thus, the district court correctly construed the claim consistent with the intrinsic record.

OrthoSupport cites *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1357–59, 52 USPQ2d 1029, 1034–35 (Fed. Cir.1999), for the proposition that if a claim term is susceptible to only one reasonable interpretation, and that interpretation makes the claim "non-sensical," then the claim is invalid. While that statement of the law is accurate, it is inapplicable to the facts of this case. In *Process Control*, this court rejected a patentee's argument that the exact phrase that appeared in two different claim limitations had two different meanings within the same method claim. *Id.* at 1356–57, 190 F.3d 1350, 52 USPQ2d at 1033–34. The court held that the phrase used in the same way in the same claim had to be interpreted in the same way, and under that construction the claim "makes no sense." *Id.* at 1358, 190 F.3d 1350, 52 USPQ2d at 1034. Thus, the court held the claim invalid under 35 U.S.C. § 101 for lack of utility and under 35 U.S.C. § 112, paragraph 1, for lack of enablement. *Id.* at 1359, 52 USPQ2d at 1035.

Here, the claim term "length" is only susceptible to one reasonable interpretation. Moreover, unlike *Process Control*, the one interpretation does not make the claim "non-sensical." In fact, the district court's claim construction is the only construction that makes sense. This is not a

case where the same claim term requires two different meanings within the same claim to make sense. The district court defined the claim term consistent with the intrinsic record and in a way that preserves the claim's validity.

OrthoSupport also contends that the district court should have considered handwritten notes in the prosecuting attorney's file regarding the disputed claim terms. We disagree. Because the claim language here is susceptible to a reasonable interpretation consistent with the intrinsic record, the district court properly did not consider the extrinsic evidence. *See Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709, 716, 48 USPQ2d 1911, 1917 (Fed.Cir.1998). Furthermore, notes of a patent attorney which do not appear in the prosecution history are of little or no probative value. *Cf. Markman*, 52 F.3d at 985, 34 USPQ2d at 1334 (Fed.Cir.1995) ("The subjective intent of the inventor when he used a particular term is of little or no probative weight in determining the scope of a claim (except as documented in the prosecution history).").

### III.

We have carefully considered all of OrthoSupport's remaining arguments and hold that the district court properly construed the remaining claims and properly resolved the infringement and validity issues. The decision of the district court is, therefore, affirmed.[1]

---

1.  While we affirm the decision, we note that claim 6 of the '771 patent is defective until otherwise corrected via a certificate of correction. On its face, claim 6 depends from nonexistent claim 7. Neither party argued to this court that claim 6 is invalid for that reason. A review of the prosecution history suggests that this error is the result of a mistake made by the PTO. Because claim 1 was also found to be infringed and not invalid, the defect of claim 6 should not have an impact on the disposition of this case.