**In re Mitchell R. SWARTZ**

No. 02–1240.

United States Court of Appeals, Federal Circuit.

DECIDED: Nov. 8, 2002.

Rehearing Denied Dec. 3, 2002.

Before CLEVENGER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and PROST, Circuit Judge.

PER CURIAM.

Mitchell R. Swartz appeals from the decision of the United States Patent and Trademark Office ("PTO") Board of Patent Appeals and Interferences ("Board"), Appeal No. 1998–2593, affirming the examiner's final rejection of claims 13, 14, 21, 22, and 24–39 of application Serial No. 08/406,457 for lack of operability or utility under 35 U.S.C. § 101 and for lack of enablement under 35 U.S.C. § 112, ¶ 1. We *affirm* the Board's decision.[1]

"The question of whether a specification provides an enabling disclosure under § 112, ¶ 1, and whether an application satisfies the utility requirement of § 101 are closely related." *In re Swartz*, 232 F.3d 862, 863, 56 USPQ2d 1703, 1703 (Fed.Cir. 2000) (*"Swartz I"*). In order to be enabling, a patent specification must teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation. *Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1371, 52 USPQ2d 1129, 1135 (Fed. Cir.1999) (quoting *Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1365, 42

USPQ2d 1001, 1004 (Fed.Cir.1997)). Under § 101, any patentable invention must be useful and, accordingly, the subject matter of the claim must be operable. *Process Control Corp. v. Hydreclaim Corp.*, 190 F.3d 1350, 1358, 52 USPQ2d 1029, 1034 (Fed.Cir.1999). As a result, if the claims in a patent application fail to meet the utility requirement because they are either not useful or inoperative, they will also fail to meet the enablement requirement. *See id.*, 52 USPQ2d at 1034–35; *see also Swartz I*, 232 F.3d at 863, 56 USPQ2d at 1704 ("[I]f the claims in an application fail to meet the utility requirement because the invention is inoperative, they also fail to meet the enablement requirement because a person skilled in the art cannot practice the invention."). A claim that requires a means for accomplishing an unattainable result is necessarily inoperative and will consequently be held invalid under either § 101 or § 112. *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 956, 220 USPQ 592, 596 (Fed.Cir. 1983). Utility is a question of fact, *In re Cortright*, 165 F.3d at 1353, 1356, 49 USPQ2d 1464, 1465 (Fed.Cir.1999), while lack of enablement is a question of law based on underlying factual inquiries. *See Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1194, 49 USPQ2d 1671, 1674 (Fed.Cir.1999). On appeal, we review the Board's findings for fact for substantial evidence. *See In re Gartside*, 203 F.3d 1305, 1315, 53 USPQ2d 1769, 1775 (Fed.Cir.2000). We review questions of law *de novo*. *See In re Wright*, 999 F.2d 1557, 1561 (Fed.Cir. 1993).

Before the PTO can reject a patent application for lack of utility, it must have reason to doubt the objective truth of the

---

1. The Board also reversed the examiner's rejection of claims 34–38 of Swartz's application under 35 U.S.C. § 103. The PTO does not cross-appeal this portion of the Board's decision.

statements provided in the written description. *See In re Brana*, 51 F.3d 1560, 1566, 34 USPQ2d 1436, 1441 (Fed.Cir. 1995). Once the PTO furnishes evidence demonstrating that one of ordinary skill in the relevant art would reasonably doubt the asserted utility of the invention claimed in the application, however, the burden shifts to the applicant to provide evidence sufficient to convince such a skilled individual of the invention's asserted utility. *Swartz I*, 232 F.3d at 864, 56 USPQ2d at 1704. As this court held in *In re Brana*, 51 F.3d at 1566, 34 USPQ2d at 1441, the PTO may establish a reason to doubt an invention's asserted utility when the written description "suggest[s] an inherently unbelievable undertaking or involve[s] implausible scientific principles."

In the instant case, the Board concluded that the record evidence supported the examiner's finding that Mr. Swartz's claims are directed to the accomplishment of an "unattainable result,' i.e., a result that is not attained in a *reproducible* manner," namely cold fusion. Reviewing the references relied on by the examiner in support of its lack of utility determination, the Board determined that "there is substantial evidence of record that results in the area of 'cold fusion' were irreproducible as of the filing date of this application, and that those skilled in this art would 'reasonably doubt' the asserted utility and operability of cold fusion." The Board further concluded that Mr. Swartz had failed to demonstrate that cold fusion could be reproducibly carried out as of the filing date of his application. Pursuant to Mr. Swartz's request for reconsideration, the Board reviewed its initial decision, subsequently declining to modify that decision.

On appeal, Mr. Swartz argues that the Board's conclusion on the issue of utility was in error for two reasons. First, he asserts that the Board erred by limiting its utility analysis to the question of cold fusion because his claimed invention possesses utility outside this realm. As the Board stated on Mr. Swartz's request for rehearing, however:

> Throughout his application, throughout the prosecution, and throughout his briefs, appellant has maintained that his invention relates to and embodies the concept known as "cold fusion." We have scoured appellant's brief and his reply brief and are unable to find therein any reference to the argument now raised by appellant in his request for reconsideration concerning utility other than "cold fusion."

Because Mr. Swartz made no representations that his claimed invention related to anything other than cold fusion in his written description and throughout the prosecution of his application, he may not now make such representations on appeal. *See Swartz I*, 232 F.3d at 864, 52 USPQ2d at 1704 ("Mr. Swartz's attempt to show that his claims are directed to a process other than cold fusion must fail. In his written description and throughout prosecution of his application, Mr. Swartz continually represented his invention as relating to cold fusion."). Mr. Swartz's second argument, that the Board erroneously ignored several declarations, exhibits, and references that demonstrated the utility of his claimed invention, is equally unconvincing. The Board's decision reveals that it based its conclusions on a careful examination of the evidence of record, including those references that Ms. Swartz now alleges it disregarded. As the Board found, "[t]he list of references cited by appellant reports experimental studies that present results that *may* indicate the presence of [cold fusion]. However, this is insufficient to establish utility and enablement within the meaning of the relevant sections of the statute."

On the issue of enablement, Mr. Swartz again argues that the Board erred by fo-

cusing on cold fusion and ignoring relevant declarations, exhibits, and references. For the reasons stated above, however, these assertions lack merit. Moreover, as the Board correctly concluded, Mr. Swartz's claims failed to meet § 101's utility requirement. As such, these claims could not be enabled under § 112, ¶ 1, and the Board therefore did not err when it affirmed the examiner's rejections of Mr. Swartz's application on this ground.[2] *See Process Control Corp.*, 190 F.3d at 1358, 52 USPQ2d at 1034–35. Finally, as to the host of unsupported legal theories that Mr. Swartz advances in support of his claim, we have considered those arguments and find them entirely unpersuasive. Accordingly, the judgment of the Board is affirmed.

---

**2.** The Board analyzed Mr. Swartz's application in terms of claim 13, which it found to be representative. On appeal, Mr. Swartz takes issue with this analysis, arguing that his claims do not stand or fall with claim 13. Because Mr. Swartz's claims are all directed to cold fusion, however, and because the Board properly concluded that Mr. Swartz had failed to prove that cold fusion could be conducted in a reproducible fashion at the time of the application's filing, the question of claim 13's representative nature is irrelevant, and we therefore do not discuss it further.