**CHEF AMERICA, INC.,**
**Plaintiff–Appellant,**

v.

**LAMB–WESTON, INC., Defendant–Appellee.**

**No. 03–1279.**

United States Court of Appeals,
Federal Circuit.

Feb. 20, 2004.

Douglas B. Henderson, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., of Washington, DC, argued for plaintiff-appellant. With him on the brief was Allen M. Sokal. Of counsel on the brief was Diane Myndie Brown, General Counsel, Hand–Held Foods Group, Nestle USA—Prepared Foods Division, Inc., of Englewood, Colorado.

Robert A. Schroeder, Bingham McCutchen LLP, of Los Angeles, CA, argued for defendant-appellee. With him on the brief was Kevin K. Leung. Of counsel on the brief were John P. Passarelli, McGrath North Mullin & Kratz, of Omaha, Nebraska; and Rodney C. Jones, Lamb–Weston, Inc., of Eagle, Idaho.

Before RADER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and SCHALL, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

The sole issue in this appeal is the meaning of the following language in a patent claim: "heating the resulting batter-coated dough to a temperature in the range of about 400° F. to 850° F." The question is whether the dough itself is to be heated to that temperature (as the district court held), or whether the claim only specifies the temperature at which the dough is to be heated, i.e., the temperature

of the oven (as the appellant contends). We agree with the district court that the claim means what it says (the dough is to be heated "to" the designated temperature range) and therefore affirm.

## I

A. The appellant Chef America, Inc. owns United States Patent No. 4,761,290 ("the '290 patent"), Claim 1 of which covers "[a] process for producing a dough product which is convertible upon finish cooking by baking or exposure to microwaves in the presence of a microwave susceptor into a cooked dough product having a light, flaky, crispy texture." Col. 5, ll. 21–26. The patent explains that with prior dough products "[i]n large measure, instead of the desired light, flaky, crispy texture, the cooked products have been found to be leathery, in the case of baked products, or soggy in the case of microwave heated products." *Id.* at col. 1, ll. 53–56. The patent describes "[t]he process of the present invention" as

applying a layer of shortening flakes between the dough and a light batter which is applied to the dough, setting the batter and subsequently melting the shortening flakes present in the set batter in order to form pin holes or air cells in the batter and at the surface of the dough. Upon finish cooking, these pinholes or air cells form a porous product and permit the batter to be quickly heated and browned, resulting in a dough product having a light, flaky, crispy texture to the pocket.

*Id.* at col. 2, ll. 57–66.

The patent explains that the "baking step ... takes place in a suitable oven, preferably a convection oven in which heated air is circulated. Baking results first in setting the batter and then melting the shortening flakes. This sequence of steps can be accomplished by quickly heat-ing to a temperature in the range of about 400° degrees F. to 850° degrees F. for a period of time ranging from about 10 seconds to 5 minutes depending upon the type of dough product being processed and the temperature at which the dough is introduced into the oven." *Id.* at col. 3, ll. 56–66.

The patent gives two "examples which illustrate the preparation of various dough products according to the process of the present invention." *Id.* at col. 4, ll. 25–27. Each example states that the dough product is placed in a multi-layered convection oven and baked "at temperatures" or "at a temperature" of 680° F. to 850° F. *Id.* at col. 4, ll. 50, 66.

Independent Claim 1 of the patent states that the dough-producing process "comprises" five steps. *Id.* at col. 5, l. 26. The particular step here at issue is

heating the resulting batter-coated dough to a temperature in the range of about 400° F. to 850° F. for a period of time ranging from about 10 seconds to 5 minutes to first set said batter and then subsequently melt said shortening flakes, whereby air cells are formed in said batter and the surface of said dough.

*Id.* at col. 5, ll. 35–41.

Independent Claim 8, which is virtually identical to Claim 1 except that it provides for packaging the product with a microwave susceptor to facilitate finish cooking in a microwave oven, also includes the limitation of "heating the resulting batter-coated dough to a temperature in the range of about 400° F. to 850° F." *Id.* at col. 6, ll. 31–32.

B. Chef America sued the appellee Lamb–Weston, Inc. in the United States District Court for the District of Colorado for infringement of the '290 patent. Following a *Markman* claim-construction

hearing, the district court granted Lamb–Weston partial summary judgment construing the "heating" limitation in Claim 1 to require that the dough be heated to the specified temperature range.

In a nineteen-page order, the court "look[ed] to the ordinary meaning of the terms because the inventor did not assert any special meanings for the claim terms," noted that "[t]he claims are unambiguous as written," and "conclude[d] that the claims clearly refer to the temperature of the dough, not the oven setting." The court further concluded that "the specification supports the claim construction advocated by defendant," that "the prosecution history is also in accord with the construction that the temperature referred to is that of the dough," and that "the prior art is in accordance with construing the claims to require the dough be heated to a temperature in the range of 400° degrees to 850° degrees Farenheit [sic]." Finally, the court stated:

> Courts are not permitted to redraft claims.... Thus, even if, as plaintiff argues, construing the patent to require the dough be heated to 400° degrees to 850° degree Farenheit [sic] produces a nonsensical result, the court cannot rewrite the claims. Plaintiff's patent could have easily been written to reflect the construction plaintiff attempts to give it today. It is the job of the patentee, and not the court, to write patents carefully and consistently. The court cannot rewrite the patent, and, accordingly, I grant defendant's motion for partial summary judgment.

The district court subsequently granted Lamb–Weston's motion for summary judgment of non-infringement of the '290 patent. It noted that it was understood that "Lamb–Weston does not heat its dough products to the temperature range specified in the '290 patent and, therefore, no

literal infringement has occurred. I also conclude that the equivalents of the claim limitations are not present in Lamb–Weston's process."

Chef America's amended complaint contained claims other than patent infringement. The district court determined, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, that its grant of summary judgment of non-infringement was a final order.

## II

A. As noted, the claim requires "heating the resulting batter-coated dough to a temperature in the range of about 400° F. to 850° F." These are ordinary, simple English words whose meaning is clear and unquestionable. There is no indication that their use in this particular conjunction changes their meaning. They mean exactly what they say. The dough is to be heated to the specified temperature. Nothing even remotely suggests that what is to be heated is not the dough but the air inside the oven in which the heating takes place. Indeed, the claim does not even refer to an oven.

The problem is that if the batter-coated dough is heated to a temperature range of 400° F. to 850° F., as the claim instructs, it would be burned to a crisp. Instead of the "dough products suitable for freezing and finish cooking to a light, flaky, crispy texture," '290 patent, col. 2, ll. 11–12, which the patented process is intended to provide, the resultant product of such heating will be something that, in the words of one of the attorneys in this case, resembles a charcoal briquet. To avoid this result and to insure that the patented process can accomplish its stated objective, Chef America urges us to interpret the claim as if it read "heating the ... dough at a temperature in the range of," i.e., to apply the heating requirement to the place

where the heating takes place (the oven) rather than the item being heated (the dough).

This court, however, repeatedly and consistently has recognized that courts may not redraft claims, whether to make them operable or to sustain their validity. *See, e.g., Allen Eng'g Corp. v. Bartell Indus., Inc.,* 299 F.3d 1336, 1349 (Fed.Cir.2002); *Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.,* 214 F.3d 1302, 1308–09 (Fed. Cir.2000); *Process Control Corp. v. Hydreclaim Corp.,* 190 F.3d 1350, 1357 (Fed.Cir. 1999); *Rhine v. Casio, Inc.,* 183 F.3d 1342, 1345 (Fed.Cir.1999); *Quantum Corp. v. Rodime, PLC,* 65 F.3d 1577, 1584 (Fed.Cir. 1995); *Becton Dickinson & Co. v. C.R. Bard, Inc.,* 922 F.2d 792, 799 n. 6 (Fed.Cir. 1990). Even "a nonsensical result does not require the court to redraft the claims of the ['290] patent. Rather, where as here, claims are susceptible to only one reasonable interpretation and that interpretation results in a nonsensical construction of the claim as a whole, the claim must be invalidated." *Process Control Corp.,* 190 F.3d at 1357. "Where, as here, the claim is susceptible to only one reasonable construction, the canons of claim construction cited by [Chef America] are inapposite, and we must construe the claims based on the patentee's version of the claim as he himself drafted it." *Id.*

Thus, in accord with our settled practice we construe the claim as written, not as the patentees wish they had written it. As written, the claim unambiguously requires that the dough be heated to a temperature range of 400° F. to 850° F.

B. Although "a patentee can act as his own lexicographer to specifically define terms of a claim contrary to their ordinary meaning," *id.* (citing *Digital Biometrics v. Identix, Inc.,* 149 F.3d 1335, 1344 (Fed.Cir. 1998)), we discern nothing in the claims, the specification, or the prosecution history that indicates that the patentees here defined "to" to mean "at." To the contrary, the prosecution history suggests that the patentees intentionally used "to" rather than "at" in drafting the temperature requirements of the claim.

As originally drafted, Claim 1, which is involved here, did not contain any temperature limitations. It stated: "heating the resulting batter-coated dough to first set said batter and then subsequently melt said shortening flakes, whereby air cells are formed in said batter and the surface of said dough." Original Claim 6 however, provided for "[a] process according to Claim 1 wherein said resulting batter-coated dough is heated to a temperature within the range of about 400° degrees F to 850° degrees F for about from 10 seconds to 5 minutes." The original application also contained the description of the baking process set forth in Part I.A, above, which involved "quickly heating [the batter] to a temperature in the range of about 400° degrees F to 850° degrees F'" for a specified time range, and the first example, which stated that the dough product will be baked in a particular type of oven "at" a temperature of 680° F. to 850° F.

The examiner initially rejected all the claims under the first paragraph of 35 U.S.C. § 112 (2000) as non-enabling for various reasons, including that "[a]ny and [all] heating steps are not enabled, e.g. insignificant or excessive." In response, the patentees amended Claims 1 and 8 to add the limitation of "heating the resulting batter-coated dough to *a temperature in the range of about 400° F. to 850° F. for a period of time ranging from about 10 seconds to 5 minutes to* first set said batter and then subsequently melt said shortening flakes, whereby air cells are formed in said batter and the surface of said dough." (underlined words added by amendment).

In formulating the amendment to the claims to specify the temperature limitation, the patentees had two models before them: the heating "to" limitation of the specification and original Claim 6 or the heating "at" limitation of the example. They chose the "to" limitation which, as we have shown, plainly and unequivocally refers to the temperature to which the dough and not the air in the oven will be heated. It thus appears that the patentees consciously selected "to" rather than "at." There is nothing to indicate that in doing so they intended "to" to mean "at."

Chef America does not contend that the patentees' use of "to" rather than "at" was a draftsman's mistake. The patentees made no attempt to have such an error corrected, either by obtaining a certificate of correction from the Patent and Trademark Office pursuant to 35 U.S.C. § 255, or by action of the district court. *Cf. Novo Indus. v. Micro Molds Corp.*, 350 F.3d 1348 (Fed.Cir.2003). To the contrary they argue only that "to" should be construed to mean "at" because otherwise the patented process could not perform the function the patentees intended. As we have noted, however, we have repeatedly declined to rewrite unambiguous patent claim language for that reason.

C. Chef America criticizes the district court for failing to construe the claims as one of ordinary skill in the art would do. It cites a declaration of its baking expert, Mr. Lehmann, the Director of Baking Assurance of the American Institute of Baking, that "[t]he limitation in claims 1 and 8 'heating the resulting batter-coated dough to a temperature in the range of about 400° F to 850° F' (and the similar limitation in claim 6 specifying a range of 680° F to 850° F) mean to me, as a person of ordinary skill in the art, that the batter-coated dough is placed in an oven that has been set to a temperature in the range of about 400° F to 850° F, and remains in the oven for the period within the time range recited in the claim." Mr. Lehmann also there opined that the two examples, which use the word "at," and "are the only ones given in the patent, show that the 'heating' limitation relates to oven temperature, not product temperature." Mr. Lehmann also quoted the language from the specification containing the temperature limitation described above and stated: "[a]s a person of ordinary skill in the art in 1987, when the '290 patent application was filed, I would read this text as meaning that the product is placed in an oven whose temperature has been set in the range of about 400° F to 850° F. It was well known in 1987, and still is well known, that raising the temperature of a dough product itself to such high temperatures would result in an unusable product."

The district court rejected this contention and so do we. As the district court pointed out, "Lehmann's declaration, however, further supports [its] conclusion that the claim words themselves do not have special meaning to one skilled in the art of baking. Instead, Lehmann's declaration makes it clear that, while he may read the claim in accordance with the construction proffered by plaintiff, he does so not because the words have special meaning to him, but because it 'is well known[ ] that raising the temperature of a dough product itself to such high temperatures would result in an unusable product.'" Mr. Lehmann did not explain how the word "to" in the claim could be read to mean "at," or even state that persons of ordinary skill in the baking art would so do.

This argument of Chef America is but a restatement of its basic contention that unless we rewrite the claim, the patented process cannot perform its intended function. We have already declined, however, to take such action, and we follow the same

course in response to this additional version of the argument.

## CONCLUSION

The judgment of the district court that Lamb–Weston has not infringed the '290 patent is

*AFFIRMED.*