**IMPERIUM (IP) HOLDINGS, INC.**

v.

**APPLE, INC. et. al.**

**Case No. 4:11–CV–163.**

United States District Court,
E.D. Texas,
Sherman Division.

Jan. 28, 2013.

Silvia Jordan, Kaye Scholer, New York, NY, Jason F. Hoffman, Roy William Sigler, Alan Michael Fisch, Fisch Hoffman Sigler LLP, Washington, DC, for Plaintiff.

Daniel Johnson, Jr., Morgan Lewis & Bockius LLP, San Francisco, CA, Lawrence Augustine Phillips, Clyde Moody Siebman, Siebman Reynolds Burg & Phillips LLP, Sherman, TX, Michael Francis Carr, Michael John Lyons, Morgan Lewis & Bockius LLP, Palo Alto, CA, David L. Witcoff, Marc S. Blackman, Jones Day, Chicago, IL, Tharan Gregory Lanier, Jones Day, Menlo Park, CA, Jennifer Parker Ainsworth, Matthew T. Milam, Wilson Robertson & Cornelius PC, Eric Hugh Findlay, Roger Brian Craft, Walter Wayne Lackey, Jr., Findlay Craft, Tyler, TX, R. Tyler Goodwyn, IV, Lora A. Brzezynski, Renzo Nicola Rocchegiani, Song K. Jung, McKenna Long & Aldridge LLP, Roy William Sigler, Fisch Hoffman Sigler LLP, Washington, DC, Mitchell G. Stockwell, Kilpatrick Townsend & Stockton LLP, Laura S. Huffman, King & Spalding, Atlanta, GA, Allison H. Altersohn, Erik J. Dykema, Jeffrey S. Seddon, II, Robert F. Perry, Susan A. Kim, King & Spalding, LLP, New York, NY, Danny Lloyd Williams, David Wynne Morehan, David Kent Wooten, Kyung Kim, Leisa Talbert Peschel, Ruben Singh Bains, Williams Morgan & Amerson PC, Joe W. Redden, Jr., Michael Ernest Richardson, Beck Redden & Secrest LLP, Houston, TX, Times Wang, Alan J. Heinrich, Jonathan Robert Lange, Lisa Partain, Stephen C. McArthur, Xinlin Li, Irell & Manella, Los Angeles, CA, John H. McDowell, Jr., Benjamin Jack Setnick, Mark David Mutschink, Andrews Kurth LLP, Dallas, TX, James V. Mahon, Andrews Kurth LLP, Durham, NC, Leslie T. Grab, Matias Ferrario, Steven D. Moore, Kilpatrick Townsend & Stockton LLP, Winston-Salem, NC, Taylor Higgins Ludlam, Kilpatrick Townsend & Stockton LLP, Raleigh, NC, for Defendants.

### Memorandum Adopting Report and Recommendation re Indefiniteness of '884, '651, & '715 Patents

RON CLARK, District Judge.

This matter was referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636, and he has recommended that Defendants' motion for summary judgment of indefiniteness regarding United States Patent No. 6,271,884, U.S. Patent No. 6,838,651, and U.S. Patent No. 6,838,715 be granted in part and denied in part [Doc. # 181; Doc. # 210]. These patents relate to digital cameras and camcorders and the sensor arrays used therein. Having received the recommendation of the United States Magistrate Judge [Doc. # 210], having considered the objections and responses thereto filed by Plaintiff and Defendants [Doc. # 219; Doc. # 222; Doc. # 238; Doc. # 241], and having conducted a *de novo* review of the objections in relation to the pleadings and applicable law, this court is of the opinion that the findings and conclusions of the Magistrate Judge are correct and adopts the Magistrate Judge's reports as the findings and conclusions of the court.

## DISCUSSION

### A. Defendants' Objections to Recommended Denial of Motion for Summary Judgment as to '884 Patent and '715 Patent [Doc. # 219]

Defendants object to the report's findings that "overall gain control block" in Claim 14 of the '884 Patent connotes sufficient structure to avoid being a means-plus-function term (or, alternatively, that adequate corresponding structure is disclosed), that the word "approximately" in the term "approximately aligns" in claims of the '715 Patent does not render the claims invalid as indefinite, and that the phrase "shifted closer to said optical center ..." in claims of the '715 Patent does not create a physical impossibility that renders the claims invalid as indefinite [Doc. # 219 at 2, 5, 6, 10]. All of these issues have been properly addressed by the report of the Magistrate Judge [Doc. # 210 at 753–56, 759–65], but certain specific objections are discussed in further detail herein.

### 1. '884 Patent

As to "overall gain control block," Defendants submit the court failed to address the "USB Camera Designer's Guide," which was a proprietary document of the original assignee of the patent, Conexant Systems, Inc. *Id.* The patentee submitted the USB Camera Designer's Guide to the United States Patent and Trademark Office during prosecution of the '884 Patent, and Defendants argue the USB Camera Designer's Guide confirms that the term "block" does not connote structure. *Id.* at 4.

In its response, Plaintiff argued that the Magistrate Judge's finding that the claim term "overall gain control block" is not a means-plus-function limitation is fully supported by both the intrinsic record and the law [Doc. # 238 at 3]. Plaintiff contends that the USB Camera Designer's Guide

indicates that the term "block" is purely functional, and the sections on which Defendants rely do not discuss the term "overall gain control block." *Id.* at 5 n. 18.

As a preliminary matter, Defendants' reply brief in support of their motion for summary judgment cited the USB Camera Designer's Guide in a footnote only to rebut Plaintiff's reliance on it as evidence that the constituent term "block" connotes structure to a person of ordinary skill in that art [Doc. # 192 at 2 n. 1; Doc. # 185 at 7 n. 18; *See* Doc. # 185, Ex. 2, USB Camera Designer's Guide at p. "2–3" ("Power conditioning block"), p. "3–8" ("Clock Generator Block") ]. In other words, Defendants argued that the court should not to rely upon the USB Camera Designer's Guide. The Magistrate Judge evidently agreed with Defendants.

But even considering the USB Camera Designer's Guide, the specification and the claims are far more probative than two isolated uses of the term "block" (cited in the preceding paragraph) in an essentially extrinsic design manual that the patentee submitted during prosecution. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed.Cir. 2005) ("[W]hile extrinsic evidence can shed useful light on the relevant art, we have explained that it is less significant than the intrinsic record in determining the legally operative meaning of claim language.") (citations and internal quotation marks omitted). The Magistrate Judge properly found that "overall gain control block" connotes sufficient structure to avoid application of 35 U.S.C. § 112, ¶ 6, particularly in light of the presumption that 35 U.S.C. § 112, ¶ 6 does not apply where the claim language does not expressly recite a "means." *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1358 (Fed.Cir.2004). The Magistrate Judge also properly found, in the alternative, that the claims and the specification disclose

sufficient corresponding structure [Doc. # 210 at 755–56]. This court adopts those findings, and Defendants' objections are accordingly overruled.

### 2. '715 Patent

There are sometimes cases involving a term of degree where "the patent fails to provide a person of ordinary skill in the art an objective anchor against which a potentially infringing product may be compared" and "provides no objective framework regarding what is necessary to serve the inventor's purposes." *Advanced Display Techs. of Tex., LLC v. AU Optronics Corp., et al.,* Nos. 6:11–CV–11, –391, 2012 WL 2872121, at *12–*13 (E.D.Tex. July 12, 2012) (Davis, J.). In addition, Defendants cite the presence of "close prior art" as requiring better definition for the degree of "approximately" than is provided in the patent. *Amgen, Inc. v. Chugai Pharm. Co., Ltd.,* 927 F.2d 1200, 1218 (Fed.Cir. 1991) ("When the meaning of claims is in doubt, especially when, as is the case here, there is close prior art, they are properly declared invalid."). However, in the present case, the term "approximately" in Claims 1–3, 5, 6, 9–11, and 13–15 of the '715 Patent is anchored by the disclosure of the operation of the purported invention and the use of "shift groups," as thoroughly addressed in the five-page analysis by the Magistrate Judge [*See* Doc. # 210 at 760–63]. Defendants' objections in this regard are overruled.

As to "shifted closer to said optical center ..." in Claims 1 and 11, Defendants re-urge their reliance on *Chef America* and the general principle that courts should not rewrite unambiguous claim language to avoid inoperability. *Chef Am., Inc. v. Lamb–Weston, Inc.,* 358 F.3d 1371, 1374 (Fed.Cir.2004). The Magistrate Judge fully considered *Chef America* and correctly concluded that "there is a plain, natural reading of the claim that avoids inoperability or exclusion of all embodi-

ments and that is consistent with the specification" [Doc. # 210 at 764]. Both the first and second metal interconnect segments shift closer to the optical center, but the second shifts more. Defendants' objection in this regard is overruled.

Accordingly, Defendants' objections as to the term "overall gain control block" in the '884 Patent, the "approximately aligns" terms in the '715 Patent, and the term "shifted closer to said optical center ..." in the '715 Patent are overruled.

### B. Plaintiff's Objections to Recommended Grant of Motion for Summary Judgment as to '651 Patent [Doc. # 222]

Plaintiff objects to the recommendation that Claims 13–15 are invalid because of lack of antecedent basis for the term "pixels," plural [Doc. # 222 at 1]. Many of Plaintiff's objections have already been addressed by the Magistrate Judge in his recommendations [Doc. # 241 at 3]. Claim 13 recites:

Claim 13 recites (emphasis added):

13. A solid state imaging device, comprising:

groups of pixels, wherein each of said groups of pixels include:

*a red pixel* having an output;

a blue pixel having an output;

a first green pixel having an output; and

a second green pixel having an output;

a first analog-to-digital converter connected to the output of *the red pixel* for converting the output of *the red pixels* into a first digital signal and connected to the output of the blue pixel for converting the output of the blue pixels into a second digital signal;

a second analog-to-digital converter connected to the output of the first

green pixel for converting the output of the first green pixels into a third digital signal and connected to the output of the second green pixel for converting the output of the second green pixels into a fourth digital signal; and

a color interpolation circuit for combining the first, second, third and fourth digital signals.

Plaintiff submits the plural term "pixels" and the "groups of pixels" language were added to distinguish the "Fowler" prior art, in which, according to Plaintiff, each of the analog-to-digital converters ("A/D converters") was dedicated to a single pixel. *Id.* at 4–5. The patentee amended application claim 12 (which was similar to application claim 17, which in turn ultimately issued as Claim 13 of the '651 Patent) and argued:

It is respectfully submitted that Fowler discloses that each pixel 14 in FIG. 1 has a dedicated A/D converter. (See col. 2, lines 47–54.) In contrast, claim 12 of the present application, as amended, includes a first A/D converter for the red *pixels*, a second A/D converter for the blue *pixels*, a third A/D converter for the first green *pixels*, and a fourth A/D converter for the second green *pixels*. Therefore, in sharp contrast to Fowler, each of the A/D converters of claim 12 is not dedicated to a single pixel.

[Doc. # 181, Ex. 1, 9/22/2003 Amendment and Response at 14].

█ Plaintiff did not present this prosecution history or the Fowler reference to the Magistrate Judge when responding to Defendants' briefing or oral argument [*See* Doc. # 185; Doc. # 202; Doc. # 241 at 4], and evidence and arguments presented for the first time upon objection to a report and recommendation need not be considered. *Rhodes v. Dir., TDCJ–CID,* No. 6:11–CV236, 2011 WL 6153088, at *3 (E.D.Tex. Dec. 12, 2011) ("The Fifth Circuit has held that issues raised for the first time in objections to the Report of the Magistrate Judge are not properly before the District Court.") (citing *Finley v. Johnson,* 243 F.3d 215, 218 n. 3 (5th Cir. 2001), *United States v. Armstrong,* 951 F.2d 626, 630 (5th Cir.1992), *Cupit v. Whitley,* 28 F.3d 532, 535 n. 5 (5th Cir.1994)).

Moreover, even if the prosecution history involving Fowler is considered, it fails to resolve the antecedent basis problem. In particular, Plaintiff does not address the problem emphasized by the Magistrate Judge that Claim 13 recites "a first analog-to-digital converter connected to the output of *the red pixel* [ (singular) ] for converting the output of *the red pixels* [ (plural) ] into a first digital signal" [Doc. # 210 at 758].

Plaintiff relies on the examiner's silence on this issue as evidence that the examiner did not find any lack of antecedent basis [Doc. # 222 at 5]. Plaintiff presents no authority, however, for the proposition that the absence of such an objection during prosecution should preclude a finding of indefiniteness during litigation. Further, at the time of the September 22, 2003 amendment and the January 16, 2004 office action cited by Plaintiff as evidence of the examiner's acquiescence, the claims at issue did not recite the "connected to the output of the red pixel [ (singular) ]" language that appears in issued Claim 13 [*See* Doc. # 222, Ex. 2, 9/22/2003 Amendment and Response at 6–8; Doc. # 222, Ex. 3, 1/16/2004 Final Rejection at 5–7]. The patentee added that language to application claim 17 later, as part of the January 28, 2004 Amendment and Response [Doc. # 181, Ex. 2 at 5]. The prosecution history relied upon by Plaintiff thus predates the "connected to the output of the red pixel [ (singular) ]" language on which the Magistrate Judge relied.

The Magistrate Judge properly found Claims 13–15 of the '651 Patent invalid

based on indefiniteness. Plaintiff's objections in that regard are overruled.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the Report and Recommendation [Doc. # 210] on Defendants' Motion for Summary Judgment of Indefiniteness Regarding U.S. Patent No. 6,271,884, U.S. Patent No. 6,838,651, and U.S. Patent No. 6,838,715 [Doc. # 181] is hereby adopted, and Defendants' motion [Doc. # 181] is accordingly hereby **GRANTED IN PART** and **DENIED IN PART.** Specifically, Defendants' motion is **GRANTED** as to claims 13, 14, and 15 of the '651 Patent, but is otherwise **DENIED.**

## *REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE*

AMOS L. MAZZANT, United States Magistrate Judge.

Before the Court is Defendants' Motion for Summary Judgment of Indefiniteness Regarding U.S. Patent No. 6,271,884 ("'884 Patent"), U.S. Patent No. 6,838,651 ("'651 Patent"), and U.S. Patent No. 6,838,715 ("'715 Patent") ("Motion") (Dkt. # 181). Also before the Court are Plaintiff's Opposition ("Response") (Dkt. # 185) and Defendants' Reply ("Reply") (Dkt. # 192). The Court held a hearing on May 31, 2012. Having considered the relevant pleadings and oral arguments of counsel, the Court is of the opinion that Defendants' motion for summary judgment should be granted in part and denied in part, as set forth herein.

## BACKGROUND

In the above-captioned case, Plaintiff asserts five patents related to digital cameras and camcorders, and the sensor arrays used therein. Defendants' present motion requests summary judgment of indefiniteness based on "ambiguous limita- tions" in several asserted claims of three of the patents-in-suit, which are addressed in turn herein. Motion (Dkt. # 181) at 1. All remaining Defendants join in this motion.

## LEGAL STANDARDS

In a motion for summary judgment, the moving party has the initial burden of showing that there is no genuine issue of any material fact and that judgment should be entered as a matter of law. Fed.R.Civ.P. 56(a) & (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "material" where it involves a fact that might affect the outcome of the suit under the governing law of the underlying cause of action. *See Burgos v. S.W. Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir.1994) (citing *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505). The nonmovant is not required to respond to a motion for summary judgment until the movant first meets its burden of demonstrating that there are no factual issues warranting trial. *Ashe v. Corley*, 992 F.2d 540, 543 (5th Cir.1993). Once the movant has shown the absence of material fact issues, however, the opposing party has a duty to respond, via affidavits or other means, asserting specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(c). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505. "Summary judgment is appropriate in a patent case, as in other cases," under the standard of Federal Rule of Civil Procedure 56. *Nike, Inc. v. Wol-*

*verine World Wide, Inc.*, 43 F.3d 644, 646 (Fed.Cir.1994).

## ANALYSIS

### A. United States Patent No. 6,271,884

#### (1) The Parties' Positions

Defendants argue that Claim 14 and Claim 17 (which depends from Claim 14) of the '884 Patent are indefinite because the term "overall gain control block" does not recite structure, and because there is no corresponding structure disclosed in the specification. Motion (Dkt. # 181) at 4–10.

■ Title 35 U.S.C. § 112, ¶ 6 provides that a patent applicant can claim "a means or step for performing a specified function . . . and such claim shall be construed to cover the corresponding structure . . . described in the specification and equivalents thereof." *Id.* at 5. Although claim limitations subject to 35 U.S.C. § 112, ¶ 6—often referred to as "means-plus-function" limitations—usually include the phrase "means for," Defendants submit that even a limitation that does not include "means for" can be covered by 35 U.S.C. § 112, ¶ 6 if it "is drafted as a function to be performed rather than definite structure or materials." *Id.* (quoting *Mas–Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1213–14 (Fed.Cir. 1998)). "The task of determining whether the limitation in question should be regarded as a means-plus-function limitation, like all claim construction issues, is a question of law for the court." *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1358 (Fed.Cir.2004).

Defendants urge that because the claimed "block" "refers to a function that can be implemented in various structures," such as any software or hardware that performs the desired function, the term is governed by 35 U.S.C. § 112, ¶ 6. *Id.* at 6–8 (discussing *Blackboard, Inc. v. Desire2Learn Inc.*, 574 F.3d 1371 (Fed.Cir. 2009)).

Defendants then submit that because the "overall gain control block" is computer-implemented, the corresponding structure must be a specific algorithm, not a general purpose computer, and must not merely be a restatement of the desired function. *Id.* at 8 (citing *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1253 (Fed. Cir.2005); *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed.Cir.2008)). Defendants argue that because the specification discloses no algorithm, the term "overall gain control block" renders Claims 14 and 17 indefinite. *Id.* at 9 (citing, *e.g.*, *Aristocrat*, 521 F.3d at 1334–35).

Plaintiff responds that the absence of "means for" language in the claims gives rise to "a strong presumption against" applying 35 U.S.C. § 112, ¶ 6. Response (Dkt. # 185) at 1 & 4. Plaintiff also argues that "the term 'block' provides sufficient structure as it is well-understood in the art—as reflected in the '884 Patent's specification—to refer to specific hardware or software units configured to perform specific functions." *Id.* at 1 & 5 (citing *Lighting World*, 382 F.3d at 1362). Plaintiff concludes that 35 U.S.C. § 112, ¶ 6 does not apply. Finally, Plaintiff argues that Defendants' cited authorities of *Mas–Hamilton* and *Desire2Learn* are distinguishable because the *Mas–Hamilton* prosecution history described the "element" at issue as a "means," and because *Desire2Learn* analyzed whether there was sufficient corresponding structure, not whether the term at issue should be interpreted under 35 U.S.C. § 112, ¶ 6. *Id.* at 8.

Alternatively, Plaintiff argues that even under 35 U.S.C. § 112, ¶ 6, the specification discloses sufficient structure, in particular the "device driver 304." *Id.* at 9–10. Plaintiff submits that the "device driver 304 . . . over time alters the overall system gain," and does so according to an

algorithm, disclosed in both Claim 14 and the specification, that includes "adjusting the integration time while maintaining the integration time at an integral multiple of the period of the periodic intensity." *Id.* at 9–10 (citing '884 Patent at Claim 14 & 6:6–9).

Defendants reply that "Plaintiff's construction attempts to capture all possible structures for adjusting overall system gain. This is the very definition of functional claiming." Reply (Dkt. # 192) at 1 (emphasis omitted). Defendants cite *Massachusetts Institute of Technology and Electronics For Imaging, Inc. v. Abacus Software,* which affirmed a finding that "colorant selection mechanism" was subject to 35 U.S.C. § 112, ¶ 6. *Id.* at 2 (citing 462 F.3d 1344, 1354 (Fed.Cir.2006)).

Alternatively, Defendants reply that the purported corresponding algorithm cited by Plaintiff is in fact "merely the recitation of the function to be performed, not an algorithm for performing that function." *Id.* at 3. At best, Defendants argue, "this language merely describes the outcome of the claimed function, which is insufficient." *Id.* As to the "device driver" disclosed in the specification, Defendants reply that it "does not disclose an algorithm identifying *how* the device driver monitors the brightness data, *how* it alters overall system gain to affect that brightness, and *how* 'automatic' gain control is achieved. Instead, it merely identifies the result sought." *Id.* at 4.

At the May 31, 2012 hearing, Plaintiff emphasized that Claim 21 recites "means for varying an overall system gain," which is in the means-plus-function form covered by 35 U.S.C. § 112, ¶ 6, and which Plaintiff submitted is further evidence that Claim 14 is not covered by 35 U.S.C. § 112, ¶ 6. Plaintiff also noted that the specification uses the constituent term "block" twenty-two times. Plaintiff concluded that "block" denotes a structural term, not a means-plus-function term.

### (2) Discussion

■ Claim 14 recites (emphasis added):

14. An imager for a digital camera with reduced flicker caused by lighting having a periodic intensity, the imager providing data for a plurality of pixels, the imager comprising:

programmable integration time circuitry that controls an integration time of the plurality of pixels;

an integration time adjustment block coupled to the programmable integration time circuitry, the integration time adjustment block setting the integration time to an integral multiple of the period of the periodic intensity of the lighting; and

an *overall gain control block* that adjusts an overall system gain by adjusting the integration time while maintaining the integration time at an integral multiple of the period of the periodic intensity.

"[T]he presumption flowing from the absence of the term 'means' is a strong one that is not readily overcome." *Lighting World,* 382 F.3d at 1358; *accord Inventio AG v. ThyssenKrupp Elevator Ams. Corp.,* 649 F.3d 1350, 1356 (Fed.Cir.2011).

■ On balance, Defendants have not overcome the presumption. Instead, a person of ordinary skill in the art would understand the term "overall gain control block" to connote structure such that 35 U.S.C. § 112, ¶ 6 does not apply. *See, e.g.,* '884 Patent at 4:65–5:40 (disclosing "signal conditioning blocks," "color and gamma correction block," and "brightness histogram block") & 6:43–48 ("[A]lthough in the disclosed embodiment a particular combination of hardware and software is shown, the distribution of the various blocks among other combinations of hardware

and software, or even hardware alone, is possible while implementing the features of the invention."). The *MIT* case cited by Defendants is factually distinguishable. 462 F.3d at 1354 (regarding "colorant selection mechanism," finding that "the patentee used 'mechanism' and 'means' as synonyms."). Controlling, instead, are cases such as *Inventio,* which found that the terms "computing unit" and "modernizing device" were not means-plus-function terms. 649 F.3d at 1357–1360.

■ Alternatively, even if "overall gain control block" were found to be a means-plus-function term subject to 35 U.S.C. § 112, ¶ 6, the "device driver 304" is sufficient corresponding structure. '884 Patent at 6:6–9. Finally, even if the "device driver 304" were deemed to be a general purpose computer, thereby necessitating disclosure of a specific algorithm, Claim 14 and the specification disclose a self-explanatory algorithm of "adjusting the integration time while maintaining the integration time at an integral multiple of the period of the periodic intensity." '884 Patent at Claim 14 & 6:6–9. This is sufficient corresponding structure to avoid indefiniteness.

Defendants' motion for summary judgment should therefore be denied as to Claims 14 and 17 of the '884 Patent.

## B. United States Patent No. 6,838,651

### (1) The Parties' Positions

Defendants argue that Claim 13, as well as Claims 14 and 15 (which depend from Claim 13) are invalid as indefinite based on the term "pixels." Motion (Dkt. # 181) at 11.

Claim 13 recites (emphasis added):

13. A solid state imaging device, comprising:

groups of pixels, wherein each of said groups of pixels include:

*a red pixel* having an output;

a blue pixel having an output;

a first green pixel having an output; and

a second green pixel having an output;

a first analog-to-digital converter connected to the output of *the red pixel* for converting the output of *the red pixels* into a first digital signal and connected to the output of the blue pixel for converting the output of the blue pixels into a second digital signal;

a second analog-to-digital converter connected to the output of the first green pixel for converting the output of the first green pixels into a third digital signal and connected to the output of the second green pixel for converting the output of the second green pixels into a fourth digital signal; and

a color interpolation circuit for combining the first, second, third and fourth digital signals.

Defendants argue that the change from "red pixel" (singular) to "red pixels" (plural), italicized in the above-quoted passage, renders the claim indefinite because "[i]t is not clear to which pixel or pixels this claim language refers." Motion (Dkt. # 181) at 11. Defendants further argue "[t]he claim is unclear as to whether the A/D converter converts the output of multiple pixels into one digital signal, or converts multiple outputs of one pixel across frames into one digital signal, or something else." *Id.* at 11–12. Defendants submit that "[b]ecause the applicant demonstrated an appreciation of the use of the singular 'pixel' in [C]laim 1 and because he had three opportunities to amend the claim, it is implausible that the combined use of singular and plural in Claim 13 is an error." *Id.* at 12.

Plaintiff responds:

Defendants overlook the fact that claim 13 also explicitly recites, in part, "groups

of pixels," where "each of said groups of pixels" include "a red pixel." One of ordinary skill in the art could reasonably conclude that the A/D converter can receive output of multiple red pixels and convert them into a "first digital signal" as claimed.

Response (Dkt. # 185) at 12–13. Plaintiff also cites disclosure in the specification that "[t]he first analog-to-digital converter 114 is disposed on the chip 104, and converts the outputs of the red pixels 106 and the blue pixels 108 into digital signals." *Id.* at 13 (quoting '651 Patent at 4:65–67). Plaintiff reads this disclosure to mean that the outputs of the red pixels can be converted into a first digital signal and the outputs of the blue pixels can be converted into a second digital signal. *Id.*

Defendants reply that Plaintiff fails to "address the ambiguity caused by the fact that the recited A/D converter is only connected to a *single* pixel" but then "is used 'for converting the output of the red pixels' (plural)." Reply (Dkt. # 192) at 5. As to Plaintiff's argument that the outputs of multiple pixels can be converted into a single digital signal, Defendants reply that the specification should not be used to rewrite the plain language of the claims. *Id.* at 6.

At the May 31, 2012 hearing, Defendants argued that a person of ordinary skill in the art could not determine in the claim whether the outputs of multiple pixels are converted into one digital signal per pixel or are instead combined into one digital signal for all pixels. Likewise, Defendants urged that the claim fails to explain whether the plural "pixels" are from a single frame or from multiple frames, which Defendants argued is of concern because digital video compression is well known to include examination of a particular pixel over a series of frames.

*(2) Discussion*

██ Judicial correction of an error in a patent may be available "if (1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." *Novo Indus. v. Micro Molds Corp.*, 350 F.3d 1348, 1354 (Fed.Cir.2003). Judicial correction would not be appropriate here because Plaintiff has not requested it, and because the apparent discrepancy is subject to reasonable debate, is more significant than an obvious misspelling, and appears four times in Claim 13, as to "the red pixels," "the blue pixels," "the first green pixels," and "the second green pixels." *See LG Electronics, Inc. v. Quanta Computer Inc.*, 566 F.Supp.2d 910, 913 (W.D.Wis.2008) (noting the "nearly impossible standard for judicial correction of a patent" and citing *Novo*, 350 F.3d 1348, which "refus[ed] to correct 'a' to 'and' because other possibilities for correction existed").

██ Taking Claim 13 as it stands, then, the issue is whether a person of ordinary skill in the art could reasonably understand the claim scope despite the sudden change from "red pixel" to "red pixels."

██ Indefiniteness is a "legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Exxon Research & Eng'g Co. v. U.S.*, 265 F.3d 1371, 1376 (Fed.Cir. 2001) (citation omitted). A finding of indefiniteness must overcome the statutory presumption of validity. *See* 35 U.S.C. § 282. That is, the "standard [for finding indefiniteness] is met where an accused infringer shows by clear and convincing evidence that a skilled artisan could not discern the boundaries of the claim based on the claim language, the specification, and the prosecution history, as well as her knowledge of the relevant art area." *Hal-*

*liburton Energy Servs., Inc. v. M–I LLC,* 514 F.3d 1244, 1249–50 (Fed.Cir.2008).

In determining whether that standard is met, i.e., whether the claims at issue are sufficiently precise to permit a potential competitor to determine whether or not he is infringing, we have not held that a claim is indefinite merely because it poses a difficult issue of claim construction. We engage in claim construction every day, and cases frequently present close questions of claim construction on which expert witnesses, trial courts, and even the judges of this court may disagree. Under a broad concept of indefiniteness, all but the clearest claim construction issues could be regarded as giving rise to invalidating indefiniteness in the claims at issue. But we have not adopted that approach to the law of indefiniteness. We have not insisted that claims be plain on their face in order to avoid condemnation for indefiniteness; rather, what we have asked is that the claims be amenable to construction, however difficult that task may be. If a claim is insolubly ambiguous, and no narrowing construction can properly be adopted, we have held the claim indefinite. If the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds.... By finding claims indefinite only if reasonable efforts at claim construction prove futile, we accord respect to the statutory presumption of patent validity ... and we protect the inventive contribution of patentees, even when the drafting of their patents has been less than ideal.

*Exxon,* 265 F.3d at 1375 (citations and internal quotation marks omitted).

Claim 13, reproduced above, recites "a first analog-to-digital converter connected to the output of *the red pixel* for convert-ing the output of *the red pixels* into a first digital signal." Although Plaintiff cites the recitation of "groups of pixels," Claim 13 defines "each of said groups" as including "a red pixel having an output; a blue pixel having an output; a first green pixel having an output; and a second green pixel having an output," each of which is recited in the singular. Further, the "analog-to-digital converter" is "connected to the output of *the red pixel,*" not any "group" of pixels. Claim 13 thus differs significantly from the passage of the specification cited by Plaintiff, which discloses "[t]he first analog-to-digital converter ... converts the outputs," plural, "of the red pixels 106," plural, "and the blue pixels 108," plural, "into digital signals." '651 Patent at 4:65–67. Finally, the discrepancy between "pixel" and "pixels" appears four times in Claim 13, as noted above, which reinforces that the inconsistency should not be overlooked.

The term "the output of the red pixels" thus lacks antecedent basis. "[A] claim could be indefinite if a term does not have proper antecedent basis where such basis is not otherwise present by implication or the meaning is not reasonably ascertainable." *Halliburton,* 514 F.3d at 1249 (citing *Energizer Holdings, Inc. v. Int'l Trade Comm'n,* 435 F.3d 1366, 1370–71 (Fed.Cir.2006)); *see also Messerschmidt v. U.S.,* 29 Fed. Cl. 1, 41–43 (1993) (finding "no alternative but to find all of the claims of the [patent at issue] invalid for indefiniteness," even after noting that "the Federal Circuit has explained that claims rendered initially indefinite for lack of antecedent basis may nevertheless remain definite when read in light of the specification[ ]" and examining claims and specification); Manual of Patent Examining Procedure § 2173.05(e) (8th ed., rev. 8, July 2010) ("A claim is indefinite when it contains words or phrases whose meaning

is unclear. The lack of clarity could arise where a claim refers to 'said lever' or 'the lever,' where the claim contains no earlier recitation or limitation of a lever and where it would be unclear as to what element the limitation was making reference."); *In re Oetiker*, Nos. 91–1181, 91–1221, 951 F.2d 1267, 1991 WL 275310 (Fed. Cir. Dec. 29, 1991) (affirming finding of indefiniteness by Board of Patent Appeals and Interferences based in part on lack of proper antecedent basis because "a person skilled in the art could not determine the metes and bounds of the claimed invention"); *Advanced Tech. Incubator, Inc. v. Sharp Corp.*, No. 2:07–CV–468, 2009 WL 4403314, at *25–*26 (E.D. Tex. June 26, 2009) (finding that term "the opening in the light influencing material" lacked antecedent basis and rendered claim indefinite because the court's "attempts to remedy lack of antecedent basis all involve[d] contorted, unsatisfactory interpretations of the claims and the specification"); *Parker–Hannifin Corp. v. Baldwin Filters, Inc.*, No. 1:07–CV–1709, 2008 WL 5732941, at *8–*9 (N.D.Ohio July 3, 2008) (finding claim indefinite "for lack of antecedent basis for the claim term 'said one of said first and second end caps' ").

On balance, because the claim scope is not "discernible" or "reasonably ascertainable," Claim 13 is "insolubly ambiguous" and is therefore invalid based on indefiniteness. *Exxon*, 265 F.3d at 1375; *Halliburton*, 514 F.3d at 1249. Because Claims 14 and 15 depend from Claim 13, they include the limitations of Claims 13 and are invalid on the same basis as Claim 13.

Defendants' motion for summary judgment should therefore be granted as to Claims 13, 14, and 15 of the '651 Patent.

### C. United States Patent No. 6,838,715

First, Defendants argue that Claims 1–3, 5, 6, 9–11, and 13–15 of the '715 Patent are invalid as indefinite based on use of

the term "approximately aligns." Motion (Dkt. # 181) at 14–15. Second, Defendants argue that Claims 1–3, 5, 6, 9–11, 13, and 14 are indefinite based on "internal inconsistency." *Id.* at 16–19.

### (1) "approximately aligns"

As a representative example, Claim 1 recites (emphasis added):

1. A CMOS image sensor comprising:

a plurality of pixels arranged in an array;

said plurality of pixels including a first pixel proximate an optical center of said array, and a second pixel proximate a peripheral edge of said array;

a first metal interconnect segment associated with said first pixel; and

a second metal interconnect segment associated with said second pixel,

wherein said first metal interconnect segment and second metal interconnect segment are situated in a first metal layer,

wherein said second metal interconnect segment is shifted closer to said optical center than said first metal interconnect segment so that said second metal interconnect segment *approximately aligns* with a principal ray angle incident said second pixel.

### (a) The Parties' Positions

Defendants argue "the '715 patent provides no standard by which to judge whether a given pixel element 'approximately aligns' with the principal ray angle associated with a given pixel." Motion (Dkt. # 181) at 14.

Plaintiff responds that "words of degree, such as 'approximately,' are ubiquitous in patent claims," and Plaintiff submits that "the specification of the '715 Patent provides explicit guidance as to what consti-

tutes approximate alignment in the claims." Response (Dkt. # 185) at 16–17.

Defendants reply that Plaintiff cites only "the purpose of the patent," "aspects of the alignment," and examples that themselves use the term "approximately." Reply (Dkt. # 192) at 7. Defendants cite *Hamilton Products, Inc. v. O'Neill,* which found indefinite the term "less than approximately 0.13 in." 492 F.Supp.2d 1328, 1337 (M.D.Fla.2007).

### (b) Discussion

■ "When a word of degree is used," such as "approximately" in the '715 Patent, the Court "must determine whether the patent's specification provides some standard for measuring that degree." *Datamize, LLC v. Plumtree Software, Inc.,* 417 F.3d 1342, 1350–51 (Fed.Cir.2005) (finding that "the definition of 'aesthetically pleasing' cannot depend on an undefined standard" and noting that "one skilled in the art reading the specification is left with the unhelpful direction to consult the subjective opinions of aesthetic design specialists, database specialists, and academic studies") (quoting *Seattle Box Co. v. Indus. Crating & Packing, Inc.,* 731 F.2d 818, 826 (Fed.Cir.1984)).

■ Here, although the term "approximately" "include[s] a subjective element," its scope does not "depend solely on the unrestrained, subjective opinion of a particular individual purportedly practicing the invention." *Datamize,* 417 F.3d at 1351. Instead, the use of "approximately" must be read in the context of reducing pixel light shadowing, as disclosed in the specification (emphasis added):

Pixel light shadowing is caused when the average ray or principal ray striking the pixel deviates significantly from normal (or perpendicular to the imaging array plane). Under these conditions, one or more of the pixel elements situated over the photodetector may block a significant amount of light from being directed at the photodetector. As a result, the brightness of the resulting image is significantly reduced, resulting in poor image quality. Moreover, the pixels situated at the periphery of the imaging array are significantly more susceptible to pixel light shadowing. As a result, the resulting images have significant and undesirable brightness fall[ ] off at the edges of the field of view.
* * *
[P]roximate the corners of the array or proximate the periphery of the array, the metal interconnect segments associated with those pixels are shifted so as to appear to be "tilted" towards the optical center of the array to thereby align the light collection path with the principle ray angle incident the respective pixels. Such tilts can be typically in the range of 15 to 25 degrees for certain lenses.
* * *
In accordance with the present invention, the pixel elements, i.e., metal interconnect segments, color filter, micro lens, etc., associated with one or more pixels in CMOS imaging array 300 are physically shifted towards optical center axis 336 in order to approximately align with the principle ray angle incident each pixel.
* * *
The amount of shift for each pixel element is dependent upon the distance of the pixel element from surface 335 of the pixel, the distance of the pixel to optical center axis 336, and the principle ray angle. By way of example, suppose pixel 306 is situated at the extreme corner of CMOS imaging array 300, dimension 380 defining the distance between micro lens 334 and photodetector 322 is approximately 5 microns (m), and the camera system has a principle ray angle of 20–degrees, micro lens 334 is shifted

by amount 378 towards the optical center axis 336. Shift 378 is approximately 0.8 m depending on the shape of the micro lens and its refractive power. The amount of offset or shift for pixel elements situated below micro lens 334, e.g., color filter 332, and metal interconnect segments 326, 328 and 330, are scaled to a lower value in proportion to the relative distance above photodetector 322. In the above example, where pixel 306 is at the extreme corner of CMOS imaging array 300, shift 376 for color filter 332 is approximately 0.64 μm, shift 374 for metal three interconnect segment 330 is approximately 0.48 μm, shift 372 for metal two interconnect segments 328 is approximately 0.32 μm, and shift 370 for metal one interconnect segments 326 is approximately 0.16 μm. * * *

Due to the particular arrangement of CMOS imaging array 300, redirected rays 372 and 376 of principal ray 370 and ray bundle 374 strike photodetector 322 but are not blocked by metal interconnect segment 326, 328 and 330 because each of metal interconnect segments 326, 328 and 330, color filter 332, and micro lens 334 have been shifted toward optical center axis 336 to approximately align with principle ray 370, as described above. As a result, camera performance is significantly increased, resulting in significant or complete elimination of pixel light shadowing at the edges of CMOS imaging array 300. *According to one embodiment, 25%–50% increases in light collection at the edges of CMOS imaging array 300 is achieved.*

'715 Patent at 2:5–17, 2:65–3:5, 7:42–47, 8:24–45 & 9:55–67 (emphasis added); *see id.* at Figs. 3A & 3B.

Further, the specification discloses "shift groups" (emphasis added):

According to one embodiment, shifts are applied in groups of pixels by an amount equivalent to the supported maximum design grid. *For example, in 0.25 micron CMOS, the typical minimum design grid is 0.01 μm.* By way of illustration, a VGA imaging array comprises 640 columns and 480 rows of pixels. The number of pixels in each shift group is determined after the maximum shift value is determined at the edge of the field of view, i.e., for pixels situated at the edge of CMOS imaging array 300, as described above. If, for example, the maximum shift for a pixel element at the edge or periphery of CMOS imaging array 300 is determined to be 0.8 μm, smaller shifts will be applied in increments of 0.01 m based upon the radial distance from optical center axis 336. In the horizontal dimension, for example, there will be 80 groups of shifts, each group including 6 columns (or 6 pixels), each group further away from optical center axis 336 being shifted 0.01 closer to optical center axis 336. Shifts to the pixel elements are also applied in the vertical dimension of CMOS imaging array 300 in the manner described above.

In general, shifts are applied in greater magnitudes to pixels elements situated further away from optical center axis 336 than pixels structures situated closer to optical center axis 336. * * *

It is noted that *exceptions to this difference in shift amounts between pixels 302 and 306 arise when pixel elements of pixel 302 and 306 are in the same "shift group," in which case those pixel elements in the same shift group are shifted by the same amount,* as noted above.

'715 Patent at 8:61–9:17 & 9:37–42 (emphasis added). In short, pixel elements in a

"shift group" are shifted an equal amount even though the pixels are not all an equal distance from the optical center, and such an implementation may be necessary to accommodate manufacturing limitations. *See id.* A person of ordinary skill in the art would understand from this disclosure that the degree of alignment necessarily varies among pixels in a "shift group." The term "approximately" allows the claims to account for variation. *Cf. Young v. Lumenis, Inc.,* No. 2:03–CV–655, 2005 WL 6220098, at *10 (S.D.Ohio Nov. 1, 2005) ("The [specification] makes clear that momentary deviations from ... position are sometime required to complete the procedure properly. The word 'substantially,' when read in light of this explanation, is as specific as warranted by the nature of the invention.").

Thus, a finder of fact can objectively apply the term "approximately" in the context of the specification, including the above-quoted disclosures regarding the objectives, mechanisms, manufacturing limitations, and expected performance associated with "approximately" aligning with a principal ray angle. *See Invitrogen Corp. v. Biocrest Mfg., LP,* 424 F.3d 1374, 1384 (Fed.Cir.2005) ("[A] patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement.") (citation and internal quotation marks omitted); *see also Wellman, Inc. v. Eastman Chemical Co.,* 642 F.3d 1355, 1366–69 (Fed.Cir.2011) (reversing a finding of indefiniteness as to a temperature limitation and noting that "a patent applicant need not include in the specification that which is already known to and available to a person of ordinary skill in the art"); *Hearing Components, Inc. v. Shure, Inc.,* 600 F.3d 1357, 1367 (Fed.Cir.2010) ("Not all terms of degree are indefinite. However, the specification must 'provide[ ] some standard for measuring that degree.' ") (quoting *Datamize,* 417 F.3d at 1351); *Orthokinetics, Inc. v.*

*Safety Travel Chairs, Inc.,* 806 F.2d 1565, 1576 (Fed.Cir.1986) (regarding wheelchair apparatus for use in automobile, finding that "so dimensioned" did not render claim indefinite based on evidence of necessary variations in design to accommodate different automobiles and that "one of ordinary skill in the art would easily have been able to determine the appropriate dimensions").

Admittedly, the *Hamilton Products* case cited by Defendants is somewhat analogous to the present case. 492 F.Supp.2d 1328 (M.D.Fla.2007). There, the court found indefinite the following "approximately" language in a claim directed to a purportedly "universal" seat belt buckle as part of system for restraining an animal in a vehicle (emphasis is the *Hamilton Products* court's):

> the tongue section having a thickness of *less than approximately* 0.13″, an overall width of *less than approximately* 0.8″, and a front wall portion having a width of *less than approximately* 0.23″[,] the slot having an overall width of greater than approximately 0.53″ and a length of greater than approximately 0.99″.

*Id.* at 1337. But *Hamilton Products,* a case from the Middle District of Florida, is not binding authority on this Court. Moreover, *Hamilton Products* relied at least in part on extrinsic testimony of the inventor that the claim language should be read to cover any apparatus that achieved universal buckle fit. *Id.* at 1337–39. The court also noted the inventor's inability to provide any evidence regarding the "manufacturing tolerances" that he testified were part of the motivation for using the term "approximately." *Id.*

■ Ultimately, the Court is more persuaded by the binding authorities holding that terms of degree do not render a claim indefinite if they are as accurate as the subject matter permits, particularly in light of the above-quoted passages from

the specification, which provide objective benchmarks regarding manufacturing limitations and expected performance. *See Verve LLC v. Crane Cams, Inc.*, 311 F.3d 1116, 1120 (Fed.Cir.2002) ("Expressions such as 'substantially' are used in patent documents when warranted by the nature of the invention, in order to accommodate the minor variations that may be appropriate to secure the invention."); *Ecolab Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1367 (Fed.Cir.2001) ("[L]ike the term 'about,' the term 'substantially' is a descriptive term commonly used in patent claims to 'avoid a strict numerical boundary to the specified parameter.' "); *Seattle Box*, 731 F.2d at 821, 826 (finding blocks adequately described by the term "height substantially equal to the thickness of the tier of pipe lengths" where "the specification clearly sets forth ... that the divider blocks are intended to absorb the weight of overheard loads").

The term "approximately" therefore does not render the claims indefinite, and Defendants' motion for summary judgment should be denied in that regard.

### (2) Internal Inconsistency

Defendants' second argument, which applies to Claims 1–3, 5, 6, 9–11, 13, and 14 of the '715 Patent, concerns the term "shifted closer to said optical center than said first metal interconnect segment." This term (or a comparable term) appears in all of Claims 1–3, 5, 6, 9–11, 13, and 14 or claims from which they depend. As a representative example, Claim 1 recites (emphasis added):

1. A CMOS image sensor comprising:
   a plurality of pixels arranged in an array;
   said plurality of pixels including a *first pixel proximate an optical center* of said array, and a *second pixel proximate a peripheral edge* of said array;

a *first metal interconnect segment associated with said first pixel;* and
   a *second metal interconnect segment associated with said second pixel,*
   wherein said first metal interconnect segment and second metal interconnect segment are situated in a first metal layer,
   *wherein said second metal interconnect segment is shifted closer to said optical center than said first metal interconnect segment* so that said second metal interconnect segment approximately aligns with a principal ray angle incident said second pixel.

### (a) The Parties' Positions

Defendants submit:

Because the "second metal interconnect segment" is part of the second pixel at the periphery of the array, it cannot be closer to the center of the array than the "first metal interconnect segment," which is part of the pixel at the center of the array. Indeed, by definition, pixel elements at the periphery cannot be at the center.

Motion (Dkt. # 181) at 16. Defendants argue that this inconsistency renders the claims invalid as indefinite. *Id.* at 17 (citing *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1349 (Fed.Cir.2002)). Defendants present a similar argument as to the pixel elements recited in dependent Claims 5 ("third" and "fourth" metal interconnect segments), 9 ("first micro lens" and "second micro lens"), and 10 ("first color filter" and "second color filter"). *Id.* at 17–18.

Finally, Defendants urge the Court to reject Plaintiff's proposal to "rewrite" the claims because "[c]ourts are not permitted to rewrite claims in an effort to preserve their validity." *Id.* at 19 (citing *Chef Am., Inc. v. Lamb–Weston, Inc.*, 358 F.3d 1371, 1374 (Fed.Cir.2004) & *Allen Eng'g*, 299 F.3d at 1349). Defendants argue that the

claim does not contain any concept "that the shift of the pixel elements of one pixel is *relative* to the shift of the pixel elements of another pixel." *Id.* Instead, Defendants submit, "the claims plainly recite that the pixel elements of the pixel at the periphery of the array are *closer to the optical center* . . . ." *Id.*

Plaintiff responds that Defendants' interpretation of the claims "contradicts the specification and excludes the patent's embodiments from the scope of the claims." Response (Dkt. # 185) at 20.

In reply, Defendants reiterate their opening arguments and emphasize that claims should not be rewritten to avoid physical impossibility or to avoid excluding all embodiments. Reply (Dkt. # 192) at 9. Defendants rely primarily on *Chef America*, cited above. *Id.* (citing 358 F.3d at 1374). As to Plaintiff's reliance on the plain language of the claim, Defendants reply that "[n]owhere does the claim refer to shifting the first metal interconnect segment, let alone a comparative amount of shift of the first metal interconnect segment." *Id.* at 10.

### (b) Discussion

As a starting point, despite *Chef America*, "a construction that renders the claimed invention inoperable should be viewed with extreme skepticism." *AIA Eng'g Ltd. v. Magotteaux Int'l S/A*, 657 F.3d 1264, 1278 (Fed.Cir.2011) (citations omitted).

The *Chef America* court found that in a baking-related patent, claim language reciting "heating the resulting batter-coated dough to a temperature in the range of about 400 °F to 850 °F" unambiguously meant that the dough, not the oven, was heated to the recited temperature range. 358 F.3d at 1373–74. "Indeed, the claim does not even refer to an oven." *Id.* Here, unlike *Chef America*, there is a plain, natural reading of the claim that avoids inoperability or exclusion of all embodiments and that is consistent with the specification, such as Figure 3A and the description thereof:

> *In general, shifts are applied in greater magnitudes to pixels [sic] elements situated further away from optical center axis 336 than pixels [sic] structures situated closer to optical center axis 336.* Thus, larger shifts will be applied to metal interconnect segments 326, 328 and 330 of pixel 306 than metal interconnect segments 312, 314 and 316 of pixel 302. Likewise, larger shifts will be applied to color filter 332 and micro lens 334 of pixel 306 than color filter 318 and micro lens 320 of pixel 302. Referring to metal one segment 326 of pixel 306, for example, shift 370 indicates that that metal one segment 326 is shifted closer to optical center axis 336 relative to pixel 306 than metal one segment 312 relative to pixel 302. Thus, dimension 344 of pixel 302 is greater than dimension 346 of pixel 306 by shift amount 370. Likewise, shift 372 indicates that metal two segment 328 of pixel 306 is shifted closer to optical center axis 336 than metal two segment 314 of pixel 302, and shift 374 indicates that metal three segment 330 of pixel 306 is shifted closer to optical center axis 336 than metal three segment 316 of pixel 302.

'715 Patent at 9:14–32.

**FIG. 3A**

Figure 3A and this quoted passage support a plain reading of "shifted closer to said optical center than said first metal interconnect segment" to mean that the second metal interconnect segment and the first metal interconnect segment are *both* shifted closer to said optical center but by different amounts. In light of this supported, plain reading of the claim, Defendants' reliance on *Chef America* fails.

Because a person of ordinary skill in the art would read "shifted closer to said optical center" to refer to the relative amount of shift, Defendants' indefiniteness argument based on internal inconsistency or physical impossibility should be rejected.

### (3) Summary

In sum, Defendants have failed to meet their burden on summary judgment to prove indefiniteness by clear and convincing evidence as to either the "approximately aligns" limitation or the purported internal inconsistency regarding the phrase "shifted closer to said optical center." De-

fendants' motion for summary judgment as to Claims 1–3, 5, 6, 9–11, and 13–15 of the '715 Patent should therefore be denied.

## CONCLUSION AND RECOMMENDATION

The Court recommends that Defendants' motion for summary judgment be granted-in-part and denied-in-part. Specifically, the Court recommends that Defendants' motion should be granted as to Claims 13, 14, and 15 of the '651 Patent, but should otherwise be denied.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from de novo review by the district

court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn,* 474 U.S. 140, 148, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir.1988).

July 2, 2012